*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. D. RIPPY, Minor.

FOR PUBLICATION
November 14, 2019
9:00 a.m.

No. 347809
Wayne Circuit Court
Family Division
LC No. LC No. 18-001527-NA

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

O'BRIEN, P.J.

Respondent appeals as of right the order terminating her parental rights to the minor child, LR, under MCL 712A.19b(3)(b)(*i*) (the parent's act caused physical injury and there is a reasonable likelihood that the child will suffer from injury or abuse in the future in the parent's home), MCL 712A.19b(3)(g) (the parent failed to provide proper care and custody for the child), and MCL 712A.19b(3)(j) (there is a reasonable likelihood that child will be harmed if returned to the parent's home). We affirm.

## I. FACTS

On September 19, 2018, petitioner, the Department of Health and Human Services (DHHS), filed a petition for permanent custody. The DHHS alleged in the petition that on July 25, 2018, Children's Protective Services (CPS) received a complaint that on July 24, 2018, respondent gave birth to LR, who was in critical condition and had symptoms of fetal alcohol syndrome (FAS). The petition stated that LR was born premature at 32 weeks and would require long-term medical treatment because of suspected FAS. LR had the "physical characteristics of FAS, including: microcephaly, a thin upper lip, clenched jaw, lower set ears, webbed feet, and no testes." He also had an "intraventricular hemorrhage, hydrocephalus (buildup of fluid in the cavities deep within the brain), cystic encephalomalacia, and a small heart murmur." There was an additional concern that LR had a brain bleed that would require ongoing medical treatment. It was reported that LR had "very minimal brain activity," and that he was "brain dead and neurologically devastated." The DHHS alleged that respondent admitted to consuming alcohol throughout her pregnancy, and requested termination of respondent's parental rights at the initial dispositional hearing.

-1-

At that hearing, CPS Specialist Kiana Anderson testified that respondent "didn't have any intention of planning for this baby" and that "she wanted to give her baby to her mom." Following the initial dispositional hearing, the trial court entered an order stating its findings of fact and conclusions of law, and ultimately terminated respondent's parental rights.

## II. REUNIFICATION EFFORTS

Respondent does not challenge the trial court's determination that there were statutory grounds for terminating her parental rights. Rather, she argues that the trial court erred in terminating her parental rights because the DHHS failed to make reasonable efforts to reunite her with LR and should have established a guardianship for LR with respondent's mother. We disagree.

Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2). *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). MCL 712A.19a(2)(a) states that reasonable efforts are not required if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 722.638 provides:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

> * * *

> (*iii*) Battering, torture, or other severe physical abuse.

> * * *

> (*v*) Life threatening injury.

> * * *

> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

Under MCR 3.977(E),

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that additional efforts for reunification of the child with the respondent shall not be made, if
>
> > (1) the original, or amended, petition contains a request for termination;
>
> > (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;
>
> > (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:
>
> > > (a) are true, and
>
> > > (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), (m), or (n);
>
> > (4) termination of parental rights is in the child's best interests.

In its petition, the DHHS sought termination at the initial dispositional hearing under MCL 722.638 because it believed that LR suffered severe physical abuse at the hands of respondent. The DHHS alleged that respondent excessively consumed alcohol while pregnant with LR, causing LR to be born prematurely with extreme and ongoing medical complications.

Following the initial dispositional hearing, the trial court found that respondent had a severe problem with alcohol that persisted while she was pregnant with LR, and that she suffered from multiple mental health issues "that she stopped treating upon finding out she was pregnant." The trial court also found that LR was born with many medical issues characteristic of FAS, including "a thin upper lip, a clenched jaw, lower set ears, webbed feet, no testes, an interventricular hemorrhage, a build up of fluid in his brain cavities and a small heart murmur." Based on these medical issues, the trial court concluded that LR was a medically fragile child that would require special and life-long medical care. It was for these reasons that the trial court found grounds to assume jurisdiction over LR.

And it was for similar reasons that the trial court held that the DHHS had established statutory grounds for termination by clear and convincing evidence. The trial court considered respondent's admission that she drank alcohol throughout her pregnancy; LR's resulting medical symptoms of FAS and need for ongoing, life-long, medical treatment; and respondent's failure to seek treatment for her alcoholism or mental health issues. On these facts, the trial court concluded that statutory grounds for termination were established under MCL 712A.19b(3)(b)(*i*), (g), and (j). As will be discussed in more detail below, the trial court also concluded that termination was in LR's best interests.

Based on its stated findings, the trial court satisfied the requirements of MCR 3.977(E) to terminate respondent's rights at the initial dispositional hearing. Also, it is clear based on its stated findings that the trial court determined that LR suffered severe physical abuse (respondent's excessive consumption of alcohol while pregnant) that resulted in a life-threatening injury (LR's FAS symptoms and the accompanying medical issues), and that respondent was the perpetrator of this abuse. These findings amount to a judicial determination that respondent subjected LR to aggravated circumstances as provided in MCL 722.638(1)[1] and (2). Therefore, under MCL 712A.19b(2)(a), reasonable efforts were not required, and respondent's argument that the DHHS failed to make reasonable efforts has no merit.[2]

As for respondent's argument that a guardianship should have been established, no one petitioned the trial court for a guardianship and there is no suggestion in the record that the grandmother with whom LR was placed would have agreed to such an arrangement. In its initial petition, the DHHS requested termination of respondent's parental rights. Typically, "the appointment of a guardian is done in an effort to avoid termination of parental rights." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). And for a court to consider a guardianship before termination, one of two conditions must be met: either the DHHS must demonstrate "under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests," or the court must "not order the agency to initiate termination" proceedings under MCL 712A.19a(8). MCL 712A.19a(9). See also *In re COH*, 495 Mich 184, 197; 848 NW2d 107 (2014). Even then, the court can order a guardianship only if it "determines that [doing so] is in the child's best interests[.]" MCL 712A.19a(9)(c). Here, neither of the conditions precedent under MCL 712A.19a(9) were met, nor did the court determine that

---

[1] Specifically MCL 722.638(1)(a)(*iii*) and (*v*). We also note that the trial court arguably could have found that respondent's abuse of LR included serious impairment of an organ under MCL 722.638(1)(a)(*iv*). The trial court explicitly found that LR suffered injuries to his brain—"an interventricular hemorrhage [and] a build up of fluid in his brain cavities"—due to respondent's excessive consumption of alcohol while pregnant. The brain is an organ, and the court found that the injuries that LR's brain suffered would require extensive medical treatment.

The dissent addresses whether reasonable efforts are required when the DHHS proceeds to request termination at the initial dispositional hearing under MCL 722.638(3). Whether the DHHS is required to provide reasonable efforts in such situations is not before this Court and has no implications for this case, so it should be left as an issue for another day.

[2] Our dissenting colleague delves into whether the definition of "child" in MCL 722.638(1) includes "an embryo or fetus for purposes of the statutes governing the termination of parental rights or child protection." This issue was never raised by the parties either in the trial court or on appeal, so it is waived. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (explaining that Michigan generally follows the "raise or waive" rule). Though we could nevertheless exercise our discretion and review the issue—because it is a question of law for which the necessary facts have been presented—"this Court should decline to do so when it would require us to construct and evaluate our own arguments." *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014).

establishing a guardianship was in LR's best interests. In fact, the court concluded that *termination* was in LR's best interests, as will be discussed in the next section. Thus, respondent's argument that the trial court should have established a guardianship for LR is without merit.

## III. BEST INTERESTS

Respondent argues that the trial court erred by finding that termination of her parental rights was in LR's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "We review for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

The trial court may consider a number of factors when determining whether termination of a respondent's parental rights is in the child's best interests, including:

> "[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption. [*Id*. at 713-714, quoting *In re Olive/Metts*, 297 Mich App at 41-42.]

A parent's substance abuse history is also relevant to whether termination is in the child's best interests. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

In determining whether the termination of respondent's parental rights was in the best interests of LR, the trial court stated:

> The court finds that it is in the best interest of [LR] to terminate the parents' parental rights because of mother's extensive alcohol abuse history and father's desire to only plan with the support of the mother.[3] [LR] has extensive medical issues and the parents' [sic] are not in the position to meet [LR]'s regular needs or medical needs due to mother's unresolved mental health and alcoholism issues. Further, the parents' [sic] indicated to the CPS worker that the [sic] did not wish to plan for [LR] and wanted the maternal grandmother to adopt him. [LR] is placed with his maternal grandmother and has been placed with her since his release from the hospital. [LR] is bonded to his grandmother, she is able to meet

---

[3] Father's rights were also terminated, but he is not a party to this appeal.

his special needs and ensure that he receives the special medical care that he requires and she wants to adopt him.

CPS Specialist Anderson testified that respondent and LR shared a bond, and respondent visited him often. Despite this bond, the trial court found that termination was in LR's best interests. LR came into care because he displayed symptoms and characteristics of FAS at birth. Respondent admitted to drinking six beers a day during her pregnancy. Respondent reported to CPS Specialist Anderson that she has suffered from alcoholism "for the last six years". Also, LR is medically fragile and has extensive medical issues that require lifelong care, and it is unclear whether respondent would be able to care for him in light of her failure to address her own issues: her untreated alcoholism and mental health issues.

Moreover, respondent reported that she has another child that is not in her care because of her alcoholism.[4] The guardian-ad-litem pointed out that the same conditions existed at the time of trial that existed when respondent placed her first child in a guardianship; respondent was still suffering from alcoholism and mental health issues. Due to LR's need for permanency, stability, and finality, LR cannot wait for respondent to seek treatment. In addition, respondent stated to CPS Specialist Anderson, on multiple occasions, that she wanted to voluntarily terminate her parental rights, which is further evidence that respondent was not ready to provide LR with a permanent and stable home. Therefore, the trial court did not clearly err when it determined that there was sufficient evidence to support termination of respondent's parental rights in order to serve LR's best interests, despite any remaining bond between respondent and LR.[5]

---

[4] Respondent's seven-year-old daughter was placed in a guardianship with the child's paternal grandmother.

[5] In her best-interest argument, respondent notes, in a single sentence, that the parties were not afforded an opportunity for closing arguments. The transcript reflects that the trial court went off the record during the termination hearing and never went back on the record. Thus, based on the available transcript, the proceedings ended before the attorneys were given the opportunity for closing arguments. Yet respondent does not explain how this affected the trial court's best-interest analysis, nor does she raise her lack of closing argument as a separate issue in her statement of questions presented. Based on these failures, we deem the issue abandoned. See *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 471; 628 NW2d 577 (2001) ("Insufficiently briefed issues are deemed abandoned on appeal."); *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008) ("This issue is not contained in the statement of questions presented; it is therefore deemed abandoned.").

Respondent follows this single sentence by asserting, "Therefore, the trial court clearly erred in its failure to explicitly address the various needs of the child." It is unclear how this relates to the inability of the parties to present closing argument. It is also unclear how the trial court failed to "explicitly address the various needs of the child." The trial court acknowledged LR's medical needs and concluded that respondent would not be able to adequately address them, while LR's current placement could. The trial court also noted that, due to respondent's ongoing issues, she would be unable to meet LR's "regular needs," whereas LR's current

Affirmed.

/s/ Colleen A. O'Brien
/s/ Anica Letica

---

placement wishes to adopt him, providing him an opportunity for permanency. We therefore conclude that respondent's argument does not warrant appellate relief.