*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADELA TOMAN,

      Plaintiff-Appellant,

v

CARRIE MCDANIELS, PTA, DANIELLE SCHUELER, COTA-L, and SPARROW HOSPITAL,

      Defendants-Appellees.

FOR PUBLICATION
November 21, 2023
9:10 a.m.

No. 361655
Ingham Circuit Court
LC No. 21-000600-NH

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

BOONSTRA, J.

In this medical-malpractice action, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(7) (statute of limitations). The trial court determined that plaintiff's complaint was not timely filed. Plaintiff argues that, based on certain administrative orders (AOs) of our Supreme Court, namely AO 2020-3, 505 Mich cxxvii (2020) and AO 2020-18, 505 Mich clviii (2020), her complaint was timely filed, because those AOs tolled the statutory limitations period for a period of 102 days between March 10, 2020 and June 20, 2020, which was the exclusion period specified by the AOs. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

For purposes of this appeal, the facts are not in dispute; our recitation of them is taken from plaintiff's complaint. Plaintiff, who had an extensive history of prior medical issues, "was admitted to Sparrow Hospital on December 3, 2018, with shortness of breath and was subsequently diagnosed with acute hypoxic respiratory failure and acute coronary syndrome." On December 11, 2018, plaintiff was approved for occupational therapy and physical therapy. On December 12, 2018, which was the date of the alleged medical malpractice, plaintiff was being walked back to her bed when her "knees suddenly buckled," which led to a "comminuted fracture of her left lower fibula." Because of this fracture and a previous amputation, plaintiff was no longer suitable for rehabilitation, and she allegedly "suffered a lengthy recovery from her fracture and remains with pain and decreased mobility at this time." On December 11, 2020 (one day before the originally-

scheduled expiration of the statute of limitations),[1] plaintiff served her Notice of Intent (NOI) on defendants, which tolled the statutory limitations period until June 12, 2021 (the statute of limitations being tolled for 182 days after the service of the NOI on December 11, 2020, plus one day remaining in the original limitations period).[2] Plaintiff filed her complaint on September 21, 2021.

In the interim, and in response to the COVID-19 pandemic, our Supreme Court entered AO 2020-3 on March 23, 2020.[3] AO 2020-3 originally provided:

> In light of the continuing COVID-19 pandemic and to ensure continued access to courts, the Court orders that:
>
> For all deadlines applicable to the commencement of all civil and probate case-types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading or motion, any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1).
>
> This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19. Nothing in this order precludes a court from ordering an expedited response to a complaint or motion in order to hear and resolve an emergency matter requiring immediate attention. We continue to encourage courts to conduct hearings remotely using two-way interactive video technology or other remote participation tools whenever possible.
>
> This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses. Courts must have a system in place to allow filings without face-to-face contact to ensure that routine matters, such as filing of estates in probate court and appointment of a personal representative in a

---

[1] Because December 12, 2020 was a Saturday, the statute of limitations actually would have expired on Monday, December 14, 2020. MCR 1.108(1).

[2] A plaintiff in a medical malpractice action is required to provide the defendants with written notice of intent to file a claim not less than 182 days before commencing the action. MCL 600.2912b(1). "At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose," then "the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given." MCL 600.5856(c).

[3] Although issued on March 23, 2020, the parties agree that the exclusion period under AO 2020-3 began on March 10, 2020 because the Governor's Executive Order No. 2020-4 declared that the state of emergency began on that date.

decedent's estate, may occur without unnecessary delay and be disposed via electronic or other means.

On May 1, 2020, our Supreme Court entered Amended AO 2020-3, 505 Mich cxliv (2020), which changed the fourth paragraph by adding the following underlined language: "This order in no way prohibits or restricts a litigant from commencing a proceeding whenever the litigant chooses, nor does it suspend or toll any time period that must elapse before the commencement of an action or proceeding." Finally, on June 12, 2020, the Court entered AO 2020-18, which provided:

> In Administrative Order No. 2020-3, the Supreme Court issued an order excluding any days that fall during the State of Emergency declared by the Governor related to COVID-19 for purposes of determining the deadline applicable to the commencement of all civil and probate case types under MCR 1.108(1). Effective Saturday, June 20, 2020, that administrative order is rescinded, and the computation of time for those filings shall resume. For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. For filings with time periods that did not begin to run because of the exclusion period, the filers shall have the full periods for filing beginning on June 20, 2020.

Defendants filed their motion for summary disposition under MCR 2.116(C)(7), arguing that plaintiff's complaint was untimely because it fell outside the two-year statutory limitations period. Pertinent to this appeal, defendants contended that AO 2020-3 did not toll the statutory period of limitations for 102 days between March 10, 2020 and June 20, 2020, because the AO applied only to statutory limitations periods that would expire *during* the 102-day exclusion period, not to statutory periods that would expire *after* the exclusion period. Alternatively, defendants contended that our Supreme Court lacked authority to modify the statute of limitations for malpractice via the AOs. Plaintiff countered that AO 2020-3 applied regardless of whether the statutory period expired during or after the emergency period and that our Supreme Court had authority under MCR 1.108 to determine by what method to calculate the two-year limitations period for medical-malpractice actions. The trial court agreed with defendants. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review "de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion is properly granted under MCR 2.116(C)(7) when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . statute of limitations . . . ."

> In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true the plaintiff's well-pleaded allegations, construing them in the plaintiff's favor. We must consider affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties when determining whether a genuine

issue of material fact exists.  [*Hanley v Mazda Motor Corp*, 239 Mich App 596, 600; 609 NW2d 203 (2000) (citation omitted).]

When the facts are undisputed, whether a cause of action is barred by the applicable statute of limitations is a question of law that this Court reviews de novo.  See *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 386; 738 NW2d 664 (2007); see also *Carter v DTN Mgt Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket 360772), lv gtd 991 NW2d 586 (2023); slip op at 3 n 1.  We also review de novo the interpretation of statutes and court rules, *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019), as well as the interpretation of administrative and executive orders, see *Aguirre v Dep't of Corrections*, 307 Mich App 315, 320; 859 NW2d 267 (2014); see also *Linstrom v Trinity Health-Mich*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 358487); slip op at 5.

## B.  STATUTE OF LIMITATIONS

Plaintiff argues that her complaint was timely filed because AO 2020-3 excluded the 102-day period between March 10, 2020 and June 20, 2020 from the calculation of the two-year statutory limitations period.  We disagree.

The same principles governing the interpretation of court rules apply to interpreting AOs. *Hubbard v Stier*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 357791); slip op at 4.  "[W]e read an administrative order as a whole, reading the individual words and phrases in context, giving effect to every word and phrase, and avoiding an interpretation that would render any part surplusage or nugatory."  *Id*. at __; slip op at 4-5.  We will enforce unambiguous language as it is written without speculation about our Supreme Court's intent.  *Id*. at __; slip op at 5.

Under the Revised Judicature Act of 1961, MCL 600.101 *et seq*., the statutory limitations period for medical-malpractice claims is two years.  MCL 600.5805(8).  MCL 600.2912b(1) requires that, not less than 182 days before a malpractice complaint is filed, a plaintiff must serve an NOI on the defendants.  The NOI tolls the two-year statutory limitations period "if during that period a claim would be barred by the statute of limitations or repose . . . ."  MCL 600.5856(c).  Moreover, "the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given."  *Id*.

As applied to this case, this means that plaintiff's statute of limitations was initially scheduled to expire on December 12, 2020—a date that fell nearly six months after the end of the exclusion period—and then was extended, by virtue of plaintiff's December 11, 2020 NOI, until June 12, 2021.  As noted, plaintiff filed her complaint on September 21, 2021.

The most relevant language contained within AO 2020-3 is as follows:
> For all deadlines applicable to the commencement of all civil and probate case-types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a

pleading or motion, any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1).[4]

This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19.

The parties' primary dispute is whether AO 2020-3 excluded the 102-day emergency period for statutory limitations periods that expired *after* the emergency period ended, as defendants argue and the trial court held.

This Court has previously considered that issue, and has reached inconsistent conclusions. A review of the pertinent caselaw is therefore in order. Since that review was previously conducted in *Compagner v Angela Burch, PA-C*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359699), we restate *Compagner*'s discussion in that regard:

> As this Court noted when requesting supplemental briefing, several recent cases have addressed issues related to the computation of time and tolling of limitations or other time periods related to AO 2020-3 and 2020-18. These cases include *Wenkel v Farm Bureau General Ins Co of Mich*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 358526); *Armijo v Bronson Methodist Hospital*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket Nos. 358728, 358729); *Carter* [,___ Mich App at ___]; *Linstrom v Trinity Health-Michigan*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 358487); and *Hubbard v Stier*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 357791). All of these cases except *Wenkel* have applications for leave to appeal pending before the Michigan Supreme Court; *Wenkel's* application was recently denied. See *Wenkel v Farm Bureau General Ins Co of Mich*, ___ Mich ___; 988 NW2d 482 (2023).[5]

---

[4] MCR 1.108(1) provides:

> In computing a period of time prescribed or allowed by these rules, by court order, or by statute, the following rules apply:
>
> (1) The day of the act, event, or default after which the designated period of time begins to run is not included. The last day of the period is included, unless it is a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order; in that event the period runs until the end of the next day that is not a Saturday, Sunday, legal holiday, or day on which the court is closed pursuant to court order.

[5] Since this Court issued its decision on *Compagner*, our Supreme Court has granted an application for leave to appeal in *Carter*, see *Carter v DTN Mgt Co*, 991 NW2d 586 (2023), has directed the Clerk to schedule oral argument on an application for leave to appeal in *Armijo*, see *Armijo v Bronson Methodist Hosp*, 991 NW2d 593 (2023), has held in abeyance an application for leave to

In *Wenkel*, a unanimous panel of this Court held, in an action to recover personal injury protection (PIP) benefits under an automobile insurance policy, that the Supreme Court's administrative orders did not toll the one-year-back rule embodied in MCL 500.3145(2). *Wenkel*, ___ Mich App at ___; slip op at 4-5. The Court noted that the one-year-back rule was a "damages-limiting provision," not a "deadline[] applicable to the commencement" of a civil action. *Id*. at __; slip op at 4 (citations omitted). It further stated:

> We interpret AO 2020-3 as tolling the statute of limitations for the commencement of actions and a concomitant tolling of the filing of responsive pleadings during the state of emergency. [*Id*. at __; slip op at 4.]

Shortly after we issued *Wenkel*, another panel of this Court issued *Armijo*, in which we held that the Supreme Court's administrative orders did not toll the 182-day NOI period in a medical malpractice action. *Armijo*, ___ Mich App at ___; slip op at 7. We observed that Amended AO 2020-3 clarified that AO 2020-3 did not "suspend or toll any time period that must elapse before the commencement of an action or proceeding," and that an NOI period is such a time period. *Id*. at __; slip op at 6, quoting Amended AO 2020-3. The *Armijo* Court noted that Amended AO 2020-3 reiterated that it ". . . intended to extend all deadlines pertaining to case initiation . . . during the state of emergency . . . ." *Id*., quoting Amended AO 2020-3. The Court further held that "[b]ecause [Amended AO 2020-3] clarified that the notice period continued to run and because the administrative orders by their language only applied to deadlines which took place during the state of the emergency," *id*. at __; slip op at 7, the plaintiff's claim was time-barred under the facts of that case. Judge RIORDAN fully concurred with the lead opinion in *Armijo*, but wrote separately to explain why "the constitutionality of [AO 2020-3 and AO 2020-18] warrants careful consideration by this Court in a future case. *Armijo*, ___ Mich App at ___; slip op at 2 (opinion by RIORDAN, J., concurring).

A week after our opinion in *Armijo* was issued, another panel of this Court decided *Carter*, a premises liability case. Notwithstanding the above-quoted language of *Wenkel* and *Armijo* to the effect that AO 2020-3 only applied to deadlines for filing case-initiation and responsive pleadings "during the state of emergency," the Court in *Carter* held the opposite, i.e., that the AO's "more broadly excluded *any day* within the state of emergency, '*for purposes of determining the*

---

appeal in *Linstrom*, pending its consideration of *Armijo*, see *Linstrom v Trinity Health-Michigan*, 991 NW2d 594 (2023), and has held in abeyance an application for leave to appeal in *Compagner*, pending its consideration of *Armijo* and *Carter*, see *Compagner v Burch*, ___ NW2d ___ (2023). Although our dissenting colleague characterizes us as "refus[ing] to wait for a final ruling from our Supreme Court," we believe that the Supreme Court would benefit from the analysis set forth in this opinion, and we in any event have an independent obligation to decide the issues before us. Only in today's upside-down world could anyone characterize our fulfillment of our duties as somehow "defy[ing]" or "not respecting" our court rules.

-6-

*deadline* applicable to the commencement of all civil and probate case types under MCR 1.108(1).' " *Carter*, ___ Mich App at ___; slip op at 4, quoting AO 2020-18. *Carter* further held that the AOs were constitutional, thus deciding the issue that was reserved for decision in *Armijo*. *Id* at __; slip op at 6.

> The same panel that decided *Carter* then decided *Linstrom* a week later. In *Linstrom*, the Court applied *Carter*'s holding (that the AOs excluded all days within the state of emergency even when a deadline occurred outside the exclusion period) in the context of a medical malpractice action, and again opined that its conclusion was consistent with *Armijo*. *Linstrom*, ___ Mich App at ___; slip op at 7-9. Most recently, another panel of this Court decided *Hubbard*, in which the Court held, consistent with *Armijo* and the clarifying language of Amended AO 2020-3, that the AO's did not toll an NOI waiting period. *Hubbard*, ___ Mich App at ___; slip op at 6 (stating that "a mandatory NOI provision sets a clock ticking, not unlike a kitchen timer, that must elapse before litigation may be commenced"). [*Compagner*, ___ Mich App at ___, slip op at 7-8 (footnotes omitted).]

This Court then decided *Compagner*. With respect to this issue,[6] this Court expressed its frustration about the inconsistency in the caselaw as it had developed in this Court, stating:

> The more difficult question relates to whether the AOs only apply to deadlines that fall within the exclusion period. That difficulty arises in part because of the muddied nature of the caselaw, with *Wenkel* and *Armijo* seemingly holding one thing and *Carter* holding another. As noted, this Court in *Wenkel* and *Armijo* interpreted the AOs as applying only to deadlines (for filing case-initiation or responsive pleadings) "during the state of emergency." *Wenkel*, ___ Mich App at ___; slip op at 4; *Armijo*, ___ Mich App at ___; slip op at 6-7. Nonetheless, the Court in *Carter* held to the contrary, relying in part on the its interpretation of AO 2020-18 (which rescinded AO 2020-3):
>
> > AO 2020-18 establishes two categories of parties—one whose filings periods began to run before AO 2020-3 took effect on March 23, 2020, and one whose filing periods began to run on or after March 23, 2020. Plaintiff falls in the first category, and she therefore has "the same number of days to submit [her] filings on June 20, 2020, as [she] had when the exclusion went into effect on March 23, 2020." There is no language in AO 2020-18 limiting the first category to those whose filing deadline fell within the state of emergency. The second category identified by the Supreme Court also undermines defendant's interpretation of the administrative orders. That is, the second category concerns those whose time period did not begin to run because of AO 2020-3 and therefore could not have expired during the state

---

[6] *Compagner* also declared a conflict with *Carter* with respect to the constitutional validity of the AOs, concluding that they unconstitutionally intruded on the Legislature's sole prerogative to determine the substantive law of Michigan. We will discuss the constitutional issue in Part II(C) of this opinion.

of emergency. This demonstrates that all litigants whose limitations periods had not expired prior to the adoption of AO 2020-3 were entitled to the exclusion of days under AO 2020-3. [*Carter*, ___ Mich App at ___; slip op at 4.]

We are troubled both by the arguably inconsistent manner in which the controlling, published caselaw has developed and by the fact that AO 2020-18—which *rescinded* AO 2020-3—employed language that appears to have facilitated an interpretation of AO 2020-3 (by this Court in *Carter*) that is inconsistent with the very language of AO 2020-3 itself (and with the earlier, published caselaw interpreting it). Arguably, AO 2020-18 and its interpretation by this Court in *Carter* effectively transformed an order—AO 2020-3—that by its terms indicated that it was intended to apply to deadlines "during the state of emergency" into one that would continue to apply to deadlines that fell well outside the state of emergency. [*Compagner*, ___ Mich App at ___ (footnotes omitted); slip op at 10-11.]

Despite its frustration, the Court in *Compagner* noted that "we appear to be bound by *Carter* on this issue," and therefore opted, with seeming reluctance, to follow *Carter* on this issue. *Id*. at __; slip op at 11. *Compagner* then proceeded to declare a conflict with *Carter* with respect to the constitutional issue (which we will address later in this opinion). *Id*. at __; slip op at 21.

This Court in *Compagner* nonetheless suggested that the Court in *Carter* should have followed the holding in *Armijo* and, if it disagreed, declared a conflict with *Armijo* under MCR 7.215(J)(2):

The Court in *Carter*, while citing *Wenkel*, did not address the above-quoted language from *Wenkel*, but did state with regard to *Armijo*, "[t]o the extent *Armijo* indicated that the AOs applied only to limitations periods that expired during the state of emergency, those statements are nonbinding dicta . . . ." *Carter*, ___ Mich App at ___; slip op at 5. A credible argument could be made that the panel in *Carter* should have followed *Armijo* and declared a conflict under MCR 7.215(J). See *Griswold Properties, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007) (opinion by special conflicts panel) ("[A]n issue that is intentionally addressed and decided is not dictum if the issue is germane to the controversy in the case, even if the issue was not necessarily decisive of the controversy in the case."); see also *Carr v City of Lansing*, 259 Mich App 376, 384; 674 NW2d 168 (2004) ("[W]hen a court of last resort intentionally takes up, discusses and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.") (internal quotation marks omitted); *People v Robar*, 321 Mich App 106, 117; 910 NW2d 328 (2017) (same). [*Compagner*, ___ Mich App at ___ n 17; slip op at 9]

In these unusual circumstances, we conclude that it is appropriate for us now to look at the issue anew and, in that context, to assess the interplay of *Armijo* and *Carter*, as each of those

decisions, albeit in conflict, is arguably binding on this Court.[7]  In doing so, our principal focus is not on the substantive issue decided in *Armijo* and *Carter* (i.e., whether the AOs applied to limitations periods that expired after the exclusion period), but rather on the procedural issue of which decision— *Armijo* or *Carter*—controls.

In *Armijo*, the parties agreed that plaintiff's claim for medical malpractice accrued on March 6, 2018.  *Armijo*, ___ Mich App at ___; slip op at 7.  On February 19, 2020—16 days before the expiration of the statute of limitations—the plaintiff served her NOI, thereby tolling the statute of limitations for a period of 182 days from that NOI date.  MCL 600.5856(c) ("At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose," then "the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.").  This effectively extended the statute of limitations until September 4, 2020 (16 days past the expiration of the 182-day NOI period).  See *Haksluoto v Mt Clemens Regional Med Center*, 500 Mich 304, 323; 901 NW2d 577 (2017) ("The rule is that once the notice period ends and the time for the plaintiff to bring a claim once again begins to run, it will run for the number of whole days remaining in the limitations period when the NOI was filed, plus one day to reflect the fractional day remaining when the NOI itself was filed.").  The plaintiff filed her complaint on December 14, 2020.  *Armijo*, ___ Mich App at ___; slip op at ___; slip op at 4.

As *Carter* later noted, *Armijo* indeed held that AO 2020-3 did not toll an NOI period.  *Id.* at __; slip op at 7.  In analyzing that issue, however, the Court in *Armijo* necessarily went farther than that.  The *Armijo* Court noted that AO 2020-3, in both its initial and amended versions, expressly described the intent of the AO as follows:

> This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters *during the state of emergency* declared by the Governor related to COVID-19.  [AO 2020-3; Amended AO 2020-3; *Armijo*, ___ Mich App at ___; slip op at 3 (emphasis added).]

After considering the effect of AO 2020-3, the *Armijo* Court then concluded:

> Because Amended Administrative Order No. 2020-3, 505 Mich lxxiv (2020) clarified that the notice period continued to run and because *the administrative orders by their language only applied to deadlines which took place during the state of emergency*, August 19, 2020, was the earliest date on which plaintiff could commence her medical malpractice action.  Under MCL 600.5856(c), because plaintiff served notice of her intent to file her medical malpractice action, the two-year statutory limitations period specified under MCL 600.5805(8) which would have elapsed during the notice period was tolled, such that she had 16 days remaining of the statutory limitations period in which to

---

[7] Because *Armijo* preceded *Carter* in time and arose in the context of assessing the impact of the AOs on the statute of limitations applicable in a medical malpractice action, we will focus our analysis on the interplay between *Armijo* and *Carter*, and see no need to additionally assess *Carter*'s treatment (or lack thereof) of *Wenkel*.

commence her malpractice action. That gave plaintiff until September 4, 2020, to commence her malpractice action against defendants. The record indicates that plaintiff filed her lawsuit on December 14, 2020, long after the expiration of the statutory limitations period. Accordingly, her claims against defendants were time-barred. The trial court, therefore, reversibly erred by not granting defendants motions for summary disposition under MCR 2.116(C)(7). [*Armijo*, ___ Mich App at ___; slip op at 7 (emphasis added).]

*Armijo* thus expressly held that AO 2020-3 "only applied to deadlines which took place during the state of emergency." *Id*. In later reaching the opposite conclusion (and without declaring a conflict under MCR 7.215(J)), the Court in *Carter* dismissed *Armijo* in a footnote, stating:

Our analysis is not in conflict with this Court's recent decision in *Armijo v Bronson Methodist Hosp.*, ___Mich App ___; ___ NW2d ___, 2023 WL 324450 (2023) (Docket No. 358729). *Armijo* was a medical-malpractice case in which the plaintiff argued that the administrative orders tolled the 182-day notice waiting period, MCL 600.2912b, which in that case entirely encapsulated the state of emergency period. This Court concluded that the AOs did not toll the notice of intent waiting period, which was dispositive of that appeal. See *id*. at __; slip op. at 6-7. In contrast, this case does not concern the notice waiting period for medical malpractice cases and therefore *Armijo* is not controlling. To the extent *Armijo* indicated that the AOs applied only to limitations periods that expired during the state of emergency, those statements are nonbinding dicta because they were not necessary to the resolution of that appeal. *Griswold Props., L.L.C. v Lexington Ins. Co.*, 276 Mich App 551, 557-558, 741 NW2d 549 (2007) ("It is a well-settled rule that statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication," and are "not binding on this Court."). Indeed, because it was not necessary to the decision in that case, the *Armijo* panel did not discuss the language in AO 2020-18 establishing that the statutory limitations periods for all cases was tolled from March 10, 2020 until June 20, 2020. [*Carter*, ___ Mich App at ___ n 3, slip op at 5.]

Because of the seeming conflict brought about by *Carter*'s out-of-hand dismissal of *Armijo*, we must decide which decision is binding on us in this matter. We conclude that *Carter*'s analysis of *Armijo* was faulty,[8] that *Armijo*'s analysis of the NOI issue was not "dispositive of that

---

[8] We note that the Court in *Compagner* was also critical of *Carter* for being selective in those aspects of AO 2020-3 that it considered in its analysis:

We note that *Carter* also quoted what it deemed to be the "pertinent part" of AO 2020-3, i.e., the language that referred to "all deadlines" and to the exclusion of "any day that falls during the state of emergency" from the computation of time for purposes of MCR 1.108(1). *Carter*, ___ Mich App at ___. However, *Carter* did not address the language of AO 2020-3 that stated that it was "intended to extend

-10-

appeal," *Carter*, ___ Mich App at ___ n 3, slip op at 5, and that *Carter*'s dismissal of *Armijo* as "nonbinding dicta" was in error. The *Armijo* Court was indeed presented with the issue of whether the AO's tolled an NOI period, and concluded that they did not. But that was not the full extent of *Armijo*'s holding. To the contrary, *Armijo*'s holding necessarily also encompassed the additional conclusion that the AOs did not toll statutes of limitation that fell outside the exclusion period of the AOs.

The panel in *Carter* appears to have believed otherwise, for the reason that the NOI waiting period in *Armijo* "entirely encapsulated the state of emergency period." *Carter*, ___ Mich App at ___, n 3; slip op at 5. But *Carter*'s conclusion simply does not follow. To the contrary, and even though the entirety of the exclusion period fell within the NOI period (which was not tolled by the AOs), the plaintiff in *Armijo* still faced an extended (by the NOI) statute of limitations that expired on September 4, 2020. Consequently, her December 14, 2020 complaint was untimely unless AO 2020-3 tolled the statute of limitations itself. The issue of whether AO 2020-3 tolled the statute of limitations was therefore squarely before the Court in *Armijo*, and we conclude that *Armijo*'s conclusion that the AOs did not apply to statutes of limitation expiring after the exclusion period of the AOs was integral to its analysis and holding. *Carter*'s dismissal of *Armijo* as "nonbinding dicta" was plainly wrong.[9]

In extending *Carter*'s holding to the medical malpractice context, the same panel employed an equally faulty analysis in *Linstrom*. Indeed, the errors in *Carter* were actually exacerbated in *Linstrom*. The Court in *Linstrom* declared that its conclusion was "consistent with" *Armijo* because the "computation of the statute of limitations in *Armijo* was not similarly impacted because the original deadline was set to expire before the emergency period began." *Linstrom*, ___ Mich App at ___; slip op at 9.[10] This distinction, of course, makes no sense. Regardless of when the statute of limitations was "originally" "set to expire," the plaintiff's service of an NOI in *Armijo* extended the statute of limitations (under MCL 600.5856(c)) until a date well after the end of the exclusion period under the AOs. Consequently, it was necessary for this Court in *Armijo* not only to address the effect (if any) of the AOs on the NOI waiting period, but additionally to

---

all deadlines . . . *during the state of emergency*." AO 2020-3 (emphasis added). [*Compagner*, ___ Mich App at ___ n 19; slip op at 10-11.]

[9] Moreover, "an issue that is intentionally addressed and decided is not dictum if the issue is germane to the controversy in the case, even if the issue was not necessarily decisive of the controversy in the case." *Griswold Properties, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007) (opinion by special conflicts panel). See also *Carr v City of Lansing*, 259 Mich App 376, 384; 674 NW2d 168 (2004) ("[W]hen a court of last resort intentionally takes up, discusses and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.") (internal quotation marks omitted); *People v Robar*, 321 Mich App 106, 117; 910 NW2d 328 (2017) (same).

[10] *Linstrom* also errantly said that "[t]he plaintiff's two-year statute of limitations expired on March 6, 2020, before the state of emergency was declared," yet it simultaneously recognized that the statute of limitations was "already tolled" by plaintiff's service of an NOI "on February 19, 2020, with 16 days remaining on the limitations period." *Linstrom*, ___ Mich App at ___; slip op at 8.

-11-

address the impact of the AOs on the statute of limitations. In doing so, *Armijo* expressly held that the AOs did not apply when the statute of limitations expired after the exclusion period of the AOs.

The upshot of all of this, of course, is that *Carter* and *Linstrom* improperly failed to follow *Armijo*, and apparently did so to reach a conclusion that they would not—and could not—have reached had they properly analyzed *Armijo*—which decision was binding on the Court in both *Carter* and *Linstrom*. See MCR 7.215(J) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").

As we are confronted with two seemingly-binding yet conflicting precedents issued by this Court, we as an intermediate appellate court are compelled to follow *Armijo*. As explained in *The Law of Judicial Precedent*, with regard to an intermediate appellate court confronted with inconsistent opinions among its own precedents:

> With an intermediate appellate court, an earlier horizontal precedent nearly always controls. This doctrine is based on the "general rule" that "one panel may not overrule the decision of a prior panel." The federal appellate courts in particular apply this solution to resolve a conflict between different panels and hold that the earlier opinion controls later panels and also the district courts in the circuit. [Garner et al., *The Law of Judicial Precedent* (St Paul: Thomson/West, 2016), pp 303-304 (footnotes omitted).][11]

Indeed, according to the United States Court of Appeals for the Fourth Circuit, this rule is applied by nearly every federal circuit court to have addressed the matter:

> [W]e have made it clear that, as to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions. See *Booth v. Maryland*, 327 F.3d 377, 383 (4th Cir.2003).
>
> Most of the other circuits agree and follow the earlier of conflicting panel opinions. See, e.g., *Hiller v. Oklahoma ex rel. Used Motor Vehicle & Parts Comm'n*, 327 F.3d 1247, 1251 (10th Cir.2003) (explaining that when panel opinions are in conflict, "we are obligated to follow the earlier panel decision over the later one"); *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir.2003) ("When faced with an intra-circuit split we must apply the earliest case rule, meaning when circuit

---

[11] The four exceptions identified in *The Law of Judicial Precedent* to the general rule that the earlier decision controls are as follows: (1) "the later panel determines that the decision was clearly contrary to a then-standing vertical precedent," (2) "an intervening vertical precedent effectively overrules the earlier panel's decision," (3) "the court is applying a statute that has been amended in the interim," and (4) "(with a federal circuit court applying state law) the state courts have expressly said they disagree with a previous panel decision and would have decided the matter differently." *Id*. at p 304. None of these exceptions would apply here.

authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel." (internal quotation marks omitted)); *Southwestern Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 940 (5th Cir.2001) ("When two holdings or lines of precedent conflict, the earlier holding or line of precedent controls."); *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 822 (6th Cir.2000) ("[W]e must defer to a prior case when two panel decisions conflict."); *Ryan v. Johnson*, 115 F.3d 193, 198 (3rd Cir.1997) ("Under Third Circuit Internal Operating Procedure 9.1, when two decisions of this court conflict, we are bound by the earlier decision."); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed.Cir.1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*. Where there is direct conflict, the precedential decision is the first." (citations omitted)). The Eighth Circuit, however, follows a different approach—a panel "faced with conflicting precedents [is] free to choose which line of cases to follow." *Graham v. Contract Transp., Inc.*, 220 F.3d 910, 914 (8th Cir.2000).

We believe the better practice is the one articulated by the panel majority and followed by most other circuits. When published panel opinions are in direct conflict on a given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court. . . . [*McMellon v United States*, 387 F3d 329, 333 (CA 4, 2004).]

While we are not bound to apply these federal circuit-court decisions, see *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500, 510-511; 879 NW2d 897 (2015), we find them extremely persuasive and therefore adopt the majority rule to the effect that, when a panel of this Court is confronted with conflicting, binding precedents issued by this Court, the earlier precedent controls.[12]

We therefore deem *Armijo* to be the controlling and binding authority on this issue, and we follow it.[13] Accordingly, following *Armijo*, we conclude that AO 2020-3 did not apply to the statute of limitations in this case (which expired after the exclusion period of the AOs) and we affirm the trial court's order granting summary disposition in favor of defendants.

---

[12] "The federal circuit courts normally sit in three-judge panels," and "a holding by a three-judge panel is binding precedent within the circuit." Garner et al., *The Law of Judicial Precedent* (St Paul: Thomson/West, 2016), p 495. Generally, "a panel decision can be abrogated only by an intervening Supreme Court decision, an en banc decision to overturn, or a statutory amendment." *Id*. Thus, the federal system is similar to ours, in which published decisions issued by a three-judge panel of an appellate court are binding precedent within that appellate court, unless through an established mechanism the Court overrules that precedent. In other words, the federal system operates essentially the same as the Michigan system, except that we use a "conflict panel" or "special panel," MCR 7.215(J), rather than an "*en banc*" panel.

[13] Even if we followed the Eighth Circuit rule that we may choose which precedent to apply, for the reasons explained in this opinion, we would still choose to apply *Armijo*. In no event, however, would we be required to apply *Carter* and *Linstrom*.

-13-

## C. CONSTITUTIONAL VALIDITY OF ADMINISTRATIVE ORDERS

Defendants alternatively contend that it was beyond our Supreme Court's constitutional authority to extend the statute of limitations. We agree. We nonetheless are obliged to follow *Carter*'s holding to the contrary, but doing so does not affect the outcome of this case because, for the reasons addressed earlier in this opinion, the AOs simply did not apply in these circumstances.

After *Carter*, this Court decided *Compagner*. In *Compagner*, we went through an extensive separation-of-powers analysis explaining how, under the Michigan Constitution and our caselaw, "it is within the constitutional purview of our Supreme Court to 'by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state," Mich Const Art. 6 § 5, but "[i]t is within the constitutional purview of the Legislature, however, as the people's duly-elected representatives in the policy-making branch of government, to enact the substantive law of the state." *Id*. at __ (footnote omitted); slip op at 13-14. Further, because "[s]tatutes regarding periods of limitations are substantive in nature," *Gladych v New Family Homes, Inc*, 468 Mich 594, 600; 664 NW2d 705 (2003), and because "to the extent [a statute] enacts additional requirements regarding the tolling of the statute of limitations, the statute would supersede the court rule," *id*. at 600-601, "those substantive matters of public policy, as set forth in the [Revised Judicature Act, of 1961 MCL 600.101 et seq.], therefore fall solely and indisputably within the purview of the Legislature, not the judiciary." *Compagner*, ___ Mich App at ___ (footnote omitted); slip op at 15. Specifically, we explained as follows:

> There is no dispute in this case—and, as noted, the caselaw in any event conclusively establishes—that the Legislature's enactments regarding the statute of repose and related tolling conditions are matters exclusively within the constitutional province of the Legislature. The pertinent question, therefore, is whether AO 2020-3 addressed matters that are purely within the Supreme Court's constitutional purview, i.e., addressing the "practice and procedure in all courts of this state," Mich Const Art. 6 § 5, or whether it unconstitutionally intruded into the legislative sphere.

> *   *   *

> Although plaintiffs posit that the Supreme Court's authority to issue AO 2020-3 axiomatically flowed from the limited, procedural time-computation tweaking that it adopted in MCR 1.108(1), nothing could be further from the truth. The minor, procedural effects of MCR 1.108(1) are minimal in nature, insignificant in temporal duration, designed purely to ensure that filings are not due when the courts are closed, and can properly be characterized as falling within the "practice and procedure" bailiwick of the Supreme Court Const 1963, art 6, § 5. The effects of AO 2020-3, by contrast, are vast, indefinite in duration, purporting to apply throughout the entirety of a state of emergency period that was itself wholly undefined, potentially limitless, repeatedly extended, and bounded by nothing beyond the Governor's sole discretion (at least until such time as the Supreme Court itself declared her authority to be invalid and unconstitutional and her EOs to be without any basis in law). AO 2020-3 was of an entirely different scope and nature than is MCR 1.108(1) . . . . [*Id*. at __; slip op at 15-19 (footnote omitted).]

-14-

Ultimately, we concluded that AO 2020-3 "impermissibly and unconstitutionally intruded on the Legislature's sole and exclusive authority to determine the substantive law of the state of Michigan." *Id*. at __; slip op at 19. Accordingly, we declared a conflict with *Carter* relative to the constitutional validity of the Supreme Court's AOs. MCR 7.215(J)(2). *Id*. at __; slip op at 20.

Since our opinion in *Compagner* was issued, two relevant events have transpired. First, this Court conducted a poll of its judges under MCR 7.215(J)(3), and subsequently issued an order that a special panel not be convened.[14] Consequently, *Carter* remains binding on us in this respect.[15] Second, our Supreme Court granted an application for leave to appeal in *Carter*. Consequently, even if we were predisposed to again declare a conflict with *Carter* on this issue, this Court would be precluded from again polling its judges or from convening a special panel. MCR 7.215(J)(3)(b).

We nonetheless agree with *Compagner* and fully adopt and incorporate its rationale on the constitutional issue. We also respectfully urge our Supreme Court, in considering the issues now before it in *Carter*, to reject the analysis and conclusion set forth in *Carter*, and to instead adopt

the analysis and conclusion of *Compagner* on this issue. Unless and until the Supreme Court does so, however, we remain bound to follow *Carter* on this issue.

## III. RESPONSE TO THE DISSENT

We appreciate the frustration of our dissenting colleague, particularly given that he served on the panel that issued the flawed decision in *Carter*. With respect, however, the dissent continues to ignore or fail to understand that *Carter* was bound to follow *Armijo*. Indeed, and paradoxically, while the dissent accuses the majority in this case of improperly refusing to follow the "controlling" decision in *Carter*, it was in fact *Carter* that improperly refused to follow the earlier-published and binding decision in *Armijo*.

The dissent lamentably spills much of its ink on histrionics and personal attacks. That is truly unfortunate. The dissent's apparent pique over our revelation of *Carter*'s improprieties would be better directed at the *Carter* panel itself than at us. Our only goal is the preservation of the integrity of the judicial process, which can only be achieved by the transparency we have brought to this issue. We sympathize with our dissenting colleague's plight, given the necessity of our disclosure of his participation in *Carter*'s indiscretions. But we owe a higher obligation to

---

[14] See *Compagner v Angela Burch PA-C*, unpublished order of the Court of Appeals, entered June 21, 2023 (Docket No. 359699).

[15] As noted in *Compagner*, the *Armijo* Court decided the case before it on narrower, non-constitutional grounds; therefore, the lead opinion in *Armijo* opted not to address the issue of the constitutionality of the AOs. *Armijo*, ___ Mich App at ___; slip op at 6. The concurring opinion in *Armijo* expressed that there was "a strong argument that the administrative orders before us are unconstitutional." *Armijo*, ___ Mich App at ___; slip op at 2 (opinion by RIORDAN, J., concurring). *Compagner* subsequently explained in detail why the AOs indeed were unconstitutional. *Compagner*, ___ Mich App at ___, slip op at 8-16. We agree with the *Armijo* concurrence and with *Compagner*.

this Court as a whole, and to our system of justice, and we cannot fulfill that obligation by turning a blind eye to the mischiefs that *Carter* wrought upon the proper functioning of our legal system. We can only properly fulfil that obligation by transparently exposing *Carter*'s wrongs and by putting the law—and the legal process—back on its proper footing.

The dissent devotes several pages to relitigating the underlying issue (and to falsely attacking the majority for supposedly doing so). But as we explained earlier in this opinion, our focus is "not on the substantive issue decided in *Armijo* and *Carter* (i.e., whether the AOs applied to limitations periods that expired after the exclusion period), but rather on the procedural issue of which decision— *Armijo* or *Carter*—controls." While the dissent characterizes us as being "obsessed" with that procedural issue, we submit that it is one worthy of obsessing over because it is one on which the very integrity of the judicial process depends. *Carter*, by improperly disregarding *Armijo* in furtherance of its desired outcome, threw the judicial process to the wind. As much as the dissent may feign concern for the rule of law, for stare decisis, for binding precedent, and for "inviting chaos," it was—in truth—*Carter* that did all of that. While our dissenting colleague may lament that we are now, regrettably, having to expose *Carter*'s violation of our court rules (and our dissenting colleague's participation in that), it is imperative to the integrity of our judicial process that we do so.

The dissent offers a meager defense to what *Carter* did. It simply repeats *Carter*'s claim that *Armijo* could be distinguished because it involved an NOI (whereas *Carter* involved a statute of limitations). But as we have already painstakingly explained in this opinion—which the dissent ignores and fails even to address—*Carter*'s claimed distinction of *Armijo* was no distinction at all. *Armijo* involved *both* an NOI and a statute of limitations. In both *Armijo* and in *Carter*, the statute of limitations did not expire until after the exclusion period ended.[16] A careful consideration of *Armijo* demonstrates beyond any shadow of a doubt that *Armijo* held not only that the AOs did not toll the NOI period, but that they also did not toll the statute of limitations. *Carter* either ignored or failed to understand that and therefore indisputably erred by failing to follow the binding precedent of *Armijo*. MCR 7.215(J).[17]

---

[16] The statute of limitations in *Armijo* (which was originally scheduled to expire on March 6, 2020), was tolled by the plaintiff's February 19, 2020 service of an NOI, as a consequence of which the statute of limitations was extended for 182 days, MCL 600.5856(c), to September 4, 2020. The plaintiff therefore had to file suit between August 19, 2020 (when the NOI period expired) and the extended statute of limitations filing deadline of September 4, 2020.

[17] No one understands the holding of *Armijo* better than the *Armijo* panel members themselves, one of whom is also a signatory to this opinion. Judge Riordan joined the *Armijo* majority opinion in full, holding that the AOs "only applied to deadlines which took place during the state of emergency," *Armijo*, ___ Mich App at ___, and he further wrote in his *Armijo* concurrence that "[i]t is undisputed that the effect of those administrative orders was to toll otherwise-applicable statutes of limitation between March 10, 2020, and June 20, 2020." *Armijo*, ___ Mich App at ___ (RIORDAN, P.J., concurring). Further, Judge Riordan aptly recognized in his *Armijo* concurrence, as the dissent does now in the matter before us (and as Judge Boonstra—the author of this opinion—and Judge Redford—the author of the majority opinion in *Armijo*—did in *Compagner*),

-16-

*Carter*'s own proffered explanation for its refusal to follow *Armijo*, i.e., that the NOI period in *Armijo* "entirely encapsulated the state of emergency period," *Carter*, ___ Mich App at ___, slip op at 5, fares no better. As we have explained in detail in this opinion, the NOI issue is totally irrelevant, a red herring. The majority and the dissent agree that, as *Armijo* held and *Carter* acknowledged, the AOs did not toll NOI waiting periods. Therefore, and at the risk of a degree of repetition that apparently is necessary, because the statute of limitations in *Armijo* did not expire (because of an untolled NOI period) until *after* the exclusion period, and because *Armijo* held the plaintiff's claims in that case to be time-barred, *Armijo* necessarily also held (as the requisite and essential basis for that conclusion) that the AOs did not apply to deadlines that fell after the exclusion period ended. *Carter* either failed to understand that or invented a supposed distinction that would obfuscate the fact that it was violating our court rules by failing to follow *Armijo*. See MCR 7.216(J)(1). In either event, *Carter* was plainly wrong to conclude that *Armijo*'s determination that the AOs did not apply to post-exclusion-period deadlines was "not necessary to the resolution of that appeal," *Carter*, ___ Mich App at ___, n 3, slip op at 5, and that it was, therefore, "nonbinding dicta." *Id*. The dissent in this case makes the same mistake. Its (and *Carter*'s) simplistic and misleading efforts to distinguish *Armijo* simply do not withstand scrutiny.[18]

We thus are not, as the dissent charges, following *Armijo* (and not following *Carter*) simply because we don't agree with *Carter*, or because we are seeking an outcome we prefer, or somehow out of "disdain." [19] To the contrary, we are following *Armijo* because it was a binding decision that *Carter* improperly did not follow. The dissent is correct that in the normal course of events a panel of this Court that disagrees with a prior published decision should follow it while seeking to

---

"the serious and uncertain nature of the COVID-19 pandemic at its outbreak." *Armijo*, ___ Mich App at ___, n 2 (RIORDAN, P.J., concurring). However, as the *Armijo* concurrence stated, it is a longstanding principle of constitutional law that "[e]mergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved." *Id*., quoting *Home Bldg & Loan Ass'n v Blaisdell*, 290 US 398, 425; 54 S Ct 231; 78 L Ed 413 (1934). Likewise, emergency does not lessen the obligation of any judge of this Court to exercise his or her duty to follow the law and binding precedent. The dissent clearly disagrees and urges the majority to disregard their sworn duty as members of this Court, solely in order to reach a policy outcome that he apparently desperately desires and for which he has previously advocated (albeit without the support of any legal authority). Indeed, the *Carter* panel on which he served was only able to reach that desired outcome by blatantly disregarding the precedent to which it was bound. We choose not to follow in those injudicious footsteps.

[18] The dissent wonders what has changed since *Compagner* stated that it "appear[s] to be bound by *Carter* on this issue." *Compagner*, ___ Mich App at ___; slip op at 11. Simply put, what has changed is that, while *Compagner* focused its analysis principally on the constitutional issue, we have now engaged in a heightened level of scrutiny (of the interplay between *Armijo* and *Carter*), a level of scrutiny that the dissent apparently continues to eschew.

[19] Our dissenting colleague knows full well that he is solely responsible for the fact that we have "allow[ed] months to pass" since this case was heard (over five months ago). That is hardly a basis for impugning the integrity or motives of this opinion's author.

convene a conflict panel.[20] But this is not the normal course of events. Rather, as we have explained, these are highly unusual circumstances, in which one panel (*Carter*) refused to follow a prior published decision of another panel (*Armijo*). We therefore cannot—and are not obliged to—follow *Carter* on this issue because, to that extent, *Carter* cannot properly be viewed as a precedentially binding prior published opinion of this Court. We need not, and should not, contritely subject ourselves (and the proper functioning of the judicial process) to the lawlessness that would result from following *Carter* on this issue. Rather, it is our obligation, under the authorities cited, to put the law back on its proper footing by transparently explaining why *Carter* was wrong not to follow *Armijo* and by then following *Armijo* as the properly controlling and precedential authority that is applicable to the facts of the case before us. See MCR 7.216(J)(1).[21]

Affirmed.[22]

/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

[20] Indeed, that is precisely what *Carter* should have done if it disagreed with *Armijo*.

[21] The dissent also takes us to task for supposedly not respecting that our full Court opted not to convene a conflict panel as requested in *Compagner*. What the dissent does not seem to understand, however, is that that decision related solely to the issue of the constitutional validity of the AOs. It did not relate in any respect to the issue on which *Carter* improperly refused to follow *Armijo*.

[22] Plaintiff did not specifically raise the issue of equitable tolling before the trial court. The doctrine of equitable, or judicial tolling, has occasionally been recognized in Michigan as tolling relevant statutes of limitation when "the courts themselves have created confusion." See *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 406; 738 NW2d 664 (2007). We find the doctrine inapplicable in this case. Plaintiff filed her complaint for medical malpractice more than one year after the exclusionary period created by AO 2020-3 had ended. Neither the accrual of plaintiff's claim, nor her filing of her NOI, nor the expiration of the limitations period occurred within, or even temporally near, that exclusionary period. Nor was there a "preexisting jumble of convoluted caselaw through which the plaintiff was forced to navigate" at the time plaintiff filed her complaint. See *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590 n 65; 702 NW2d 539 (2005). Under these circumstances, plaintiff's failure to file her complaint within the applicable statute of limitations was not the "product of an understandable confusion" created by the actions of Michigan courts, see *Bryant v Oakpointe Villa Nursing Centre, Inc*, 471 Mich 411, 432; 684 NW2d 864 (2004), and we therefore conclude that the doctrine has no applicability in this case.