MORRIS v GOVERNOR (ON REMAND, AFTER REMAND)

Docket No. 182239. Submitted November 14, 1995, at Detroit. Decided
December 26, 1995, at 9:00 A.M. Leave to appeal sought.

Ken Morris and others brought an action in the Wayne Circuit
Court against the Governor of the State of Michigan and
Robert F. Edwards, seeking to halt the implementation of
Executive Order No. 1991-30, which transferred the authority,
powers, duties, functions, and responsibilities of the Michigan
Employment Security Commission to the Director of Employ-
ment Security and made the MESC an advisory board to the
director. The court, Claudia House Morcom, J., granted sum-
mary disposition for the plaintiffs on the basis that the Gover-
nor exceeded his constitutional authority by attempting the
reorganization of the MESC by an executive order. The defend-
ants appealed, and the Court of Appeals remanded the matter
to the circuit court for reconsideration in light of *House
Speaker v Governor,* 443 Mich 560 (1993). Unpublished order of
the Court of Appeals, entered November 3, 1993 (Docket No.
151140). During the pendency of the matter on remand, the
Governor issued Executive Order No. 1994-2, which reiterated
most of the provisions of EO 1991-30, but further provided for
the complete abolishment of the MESC and the transfer of all its
remaining powers to the Director of Employment Security. The
circuit court held that both EO 1991-30 and EO 1994-2 were
constitutionally infirm. The defendants appealed, and the Court
of Appeals peremptorily reversed on the basis of the holding in
*House Speaker.* Unpublished order of the Court of Appeals,
entered June 21, 1994 (Docket No. 173374). The plaintiffs
sought leave to appeal, and the Supreme Court remanded to
the Court of Appeals for plenary consideration. 448 Mich 852
(1995).

On remand, the Court of Appeals *held:*

1. The Supreme Court in *House Speaker v Governor* held
that the only limitations on the Governor's reorganization
powers under Const 1963, art 5, § 2 are that no more than

REFERENCES
Am Jur 2d, Constitutional Law §§ 303-305, 314, 323; Governor § 4.
See ALR Index under Governors.

twenty principal departments be created and that the executive orders involving executive reorganization are subject to the Legislature's veto power. The Court specifically held that "the Governor's reorganization powers are equal to the Legislature's initial and subsequent reorganization powers." Accordingly, there is no inherent conflict between the Legislature's exercise of its initial reorganization power and the Governor's subsequent exercise of his reorganization power.

2. Because the Governor's reorganization orders were issued in accordance with his authority under Const 1963, art 5, § 2, and are thus a constitutionally permissible exercise of his reorganization power, the Governor, by ordering the reorganization, can be said to have taken care to see that the laws of the state have been faithfully executed within the meaning of Const 1963, art 5, § 8, and any removal from office that might occur as a result of the reorganization can be said to be as prescribed in the constitution within the meaning of Const 1963, art 5, § 3. A reorganization that completely eliminates a board or commission and thereby terminates the services of the members of the board or commission is not a removal from office that is subject to the good cause requirement of Const 1963, art 5, § 8.

3. Because an executive order involving executive branch reorganization is subject to the Legislature's veto power, the Governor's constitutional power to undertake reorganization within the executive branch by executive order does not render meaningless the Legislature's constitutional power to undertake the initial reorganization of the executive branch.

Reversed.

CONSTITUTIONAL LAW — EXECUTIVE BRANCH REORGANIZATION — GOVERNOR.

The Governor may reorganize the executive branch of government by executive order subject only to the limitations that no more than twenty principal departments be created and that the executive orders implementing any reorganization are subject to legislative veto (Const 1963, art 5, § 2).

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *Theodore Sachs* and *Eileen Nowikowski*), and *Jordan Rossen, Connye Y. Harper,* and *Richard W. McHugh,* for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Deborah Anne Devine*

and *Thomas C. Nelson,* Assistant Attorneys General, for the defendants.

ON REMAND, AFTER REMAND

Before: GRIBBS, P.J., and NEFF and J. J. McDONALD,* JJ.

NEFF, J. Defendants appeal from an order of the circuit court reaffirming its finding that Executive Order Nos. 1991-30 and 1994-2, which relate to the reorganization of the Michigan Employment Security Commission, are unconstitutional. We reverse.

I

This is the third time this case is before this Court. Following the circuit court's initial grant of summary disposition for plaintiffs relating to Executive Order No. 1991-30, and defendants' subsequent appeal, this Court remanded this matter to the circuit court for reconsideration in light of *House Speaker v Governor,* 443 Mich 560; 506 NW2d 190 (1993), which had been decided after the circuit court's April 1, 1992, order. Unpublished order of the Court of Appeals, entered November 3, 1993 (Docket No. 151140).

On remand, plaintiffs amended their complaint and added a challenge to the constitutionality of Executive Order No. 1994-2, which the Governor had executed during the pendency of the remand proceedings. The circuit court again found Executive Order No. 1991-30 to be constitutionally infirm and found Executive Order No. 1994-2 to be likewise infirm.

Defendants appealed this ruling to this Court, moved for peremptory reversal, and applied for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

leave to appeal to the Supreme Court. The Supreme Court denied defendants' application for leave, and this Court granted defendants' motion for peremptory reversal, citing *House Speaker, supra.* Unpublished order of the Court of Appeals, entered June 21, 1994 (Docket No. 173374).

Plaintiffs then sought to appeal this Court's order to the Supreme Court, which, in lieu of granting leave, remanded this case to this Court for plenary consideration. 448 Mich 852 (1995).

## II

Plaintiffs filed this cause of action for the purpose of halting the implementation of the reorganization of the MESC by the executive orders of the Governor.

Executive Order No. 1991-30 transferred all the authority, powers, duties, functions, and responsibilities of the MESC to the Director of Employment Security, granted the Governor the authority to appoint the director and the chairperson of the MESC, and made the MESC an advisory board to the director. In addition, all budgeting and management-related matters were to be reviewable by the Department of Management and Budget, and the Michigan Employment Security Advisory Council was abolished.

Executive Order No. 1994-2 mirrored Executive Order No. 1991-30, except that it also abolished the MESC and transferred all the remaining powers of the MESC to the Director of Employment Security. Executive Order No. 1994-2 also rescinded Executive Order No. 1991-30.

## III

The issue in this case revolves around the Gov-

ernor's power under the second paragraph of
Const 1963, art 5, § 2 to reorganize the administra-
tion of the executive branch and whether a conflict
can arise between the exercise of that power and
the Legislature's exercise of its initial reorganiza-
tion power.[1] Because our Supreme Court in *House
Speaker, supra* at 579, found the Governor's power
to reorganize subsequently the executive branch to
be equal to the Legislature's initial and subse-
quent power, we conclude that no conflict can
arise.

A

Plaintiffs argue, and the circuit court agreed,
that *House Speaker* is distinguishable from this
case. Plaintiffs assert that in *House Speaker* the
question at issue was the *scope* of the Governor's
reorganization power, while here this Court's task
is to settle a *conflict* between the provisions of the
first paragraph of art 5, § 2 and the provisions of
the second paragraph of art 5, § 2. According to

---

[1] Const 1963, art 5, § 2 provides:

All executive and administrative offices, agencies and instru-
mentalities of the executive branch of state government and
their respective functions, powers and duties, except for the
office of governor and lieutenant governor and the governing
bodies of institutions of higher education provided for in this
constitution, shall be allocated by law among and within not
more than 20 principal departments. They shall be grouped as
far as practicable according to major purposes.

Subsequent to the initial allocation, the governor may make
changes in the organization of the executive branch or in the
assignment of functions among its units which he considers
necessary for efficient administration. Where these changes
require the force of law, they shall be set forth in executive
orders and submitted to the legislature. Thereafter the legisla-
ture shall have 60 calendar days of a regular session, or a full
regular session of shorter duration, to disapprove each execu-
tive order. Unless disapproved in both houses by a resolution
concurred in by a majority of members elected to and serving
in each house, each order shall become effective at a date
thereafter to be designated by the governor.

plaintiffs, this conflict arises because the Legislature, while acting pursuant to its *initial* reorganization power, specifically provided that the MESC was to be autonomous and the Governor's executive orders override that specific intent of the Legislature.

However, in light of the broad holding of *House Speaker,* plaintiffs' argument must fail. According to *House Speaker, supra* at 577, only two limits on the Governor's reorganization powers under art 5, § 2 exist: (1) no more than twenty principal departments may be created, and (2) the executive orders are subject to the Legislature's veto power. The Court also held that "after the initial executive branch organization, the Governor's reorganization powers are equal to the Legislature's *initial and subsequent* reorganization powers." *House Speaker, supra* at 579 (emphasis added).

Thus, no constitutional conflict can exist between the provisions of the first and second paragraphs of art 5, § 2, because the Governor's reorganization powers are equal to the Legislature's *initial* as well as subsequent reorganization powers. In other words, when the Governor acts under this constitutional provision by means of an executive order, and that order is not overturned by the Legislature, it is as if the Legislature had acted. See *Soap & Detergent Ass'n v Natural Resources Comm,* 103 Mich App 717, 729; 304 NW2d 267 (1981), aff'd 415 Mich 728; 330 NW2d 346 (1982).

**B**

Plaintiffs next argue that the provisions of the second paragraph of Const 1963, art 5, § 2 does not give the Governor the power to override existing law in a purported reorganization.

1

According to plaintiffs, because the executive orders override "existing laws enacted on [this] subject," the Governor violated Const 1963, art 5, § 8, which requires that he "take care that the laws be faithfully executed."

This argument, however, merely begs the ultimate question in this case. In other words, if the executive orders are constitutionally permissible, then the Governor has taken care that the laws were faithfully executed.

2

Plaintiffs also assert that by issuing the executive orders, the Governor violated the provision of the second paragraph of Const 1963, art 5, § 3 that provides that the term of office and procedure for removal of members of a board or commission at the head of a principal department, "shall be as prescribed in this constitution or by law."

This argument also misses the mark. First, this provision does not apply here because none of the entities in question is the head of a principal department. Even if this provision did apply, plaintiffs' citation to this constitutional article again merely begs the question presented in this case. That is, if the executive orders are constitutionally permissible, then, to the extent the Governor's actions can be deemed a removal of members of the entities involved, he has acted pursuant to the constitution.

3

Plaintiffs next argue that to the extent the Governor is using the executive orders to remove,

by fiat, the members of the entities involved in this dispute, he has violated Const 1963, art 5, § 10, which essentially provides that the Governor may only remove a public officer for good cause.

This argument also fails to be persuasive. The issue involved in this case is not a mere removal, which contemplates the firing of one person and the hiring of another to fill the same position. See *McDonald v Schnipke*, 380 Mich 14; 155 NW2d 169 (1968). Here we are faced with a reorganization where the position itself is eliminated.

This common-sense construction of Const 1963, art 5, § 10 allows for an interpretation following "the sense most obvious to the common understanding," and one "that reasonable minds, the great mass of people themselves, would give it." *House Speaker, supra* at 577.

C

Finally, in what is essentially a restatement of their previous arguments, plaintiffs assert that the Governor's subsequent reorganization powers under the provisions of the second paragraph of art 5, § 2 cannot override the Legislature's initial reorganization powers under the provisions of the first paragraph of art 5, § 2, otherwise, the provisions of the first paragraph would be rendered meaningless. In support of this argument, plaintiffs claim that the constitutional debates quoted in *House Speaker, supra* at 582-584, ns 28-29, do not apply here because the delegates quoted were not discussing a conflict between the Legislature's initial reorganization power and the Governor's power to reorganize subsequently the executive branch. Plaintiffs also again attempt to distinguish *House Speaker* from this case by noting that the Supreme Court there spoke only to the Governor's

power after the Legislature exercised its initial reorganization power, not to a conflict between the Legislature's initial exercise of power and the Governor's subsequent reorganization power.

The answer to all of these arguments again lies with the Supreme Court's broad holding in *House Speaker, supra.* First, because the executive orders are subject to approval by the Legislature, our interpretation of the provisions of the second paragraph does not render meaningless the provisions of the first paragraph. In other words, the Legislature is free to exert its power to uphold its original intent.

In addition, to the extent plaintiffs argue that the provisions of the second paragraph somehow confer a more limited power of reorganization to the Governor than is conferred to the Legislature in the first paragraph, that argument was specifically rejected in *House Speaker, supra* at 579: "[T]he Governor's reorganization powers are equal to the Legislature's initial and subsequent reorganization powers."

This holding demonstrates the fallacy in plaintiffs' argument that the opinion in *House Speaker* deals only with the Governor's and Legislature's subsequent power to reorganize. To the contrary, the Court specifically held that all of the Governor's and the Legislature's powers under art 5, § 2 are equal. *Id.*

IV

Because this case is not in any material aspect distinguishable from our Supreme Court's opinion in *House Speaker,* we conclude that by issuing the executive orders in question in this case, the Governor did not violate the constitution of this state.

Accordingly, the circuit court's order reaffirming

its finding that the Governor exceeded his consti-
tutional authority is reversed, and the permanent
injunction issued by that court is vacated.

Reversed.