# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT AGUIRRE, JAMES ATTERBERRY,
SR., TED HAMMON, ARTINA HARDMAN,
JOHN SULLIVAN, and LAURIN THOMAS,

        Plaintiffs-Appellees,

v

DEPARTMENT OF CORRECTIONS and STATE
OF MICHIGAN,

        Defendants-Appellants.

FOR PUBLICATION
October 21, 2014
9:20 a.m.

No. 316918
Court of Claims
LC No. 11-000129-MK

Before: METER, P.J., and WHITBECK and RIORDAN, JJ.

PER CURIAM.

Defendants, the Department of Corrections (the Department) and the State of Michigan (collectively, "the State"), appeal as of right the trial court's order granting summary disposition in favor of plaintiffs, Robert Aguirre, James Atterberry, Sr., Ted Hammon, Artina Hardman, John Sullivan, and Laurin Thomas (collectively, "the members"), whose positions with the Michigan Parole and Commutation Board were eliminated when the Governor issued Executive Order No. 2011-3. The members contend that this elimination violated the just-cause provisions of their employment contracts. Because Order 2011-3 did not transfer the members' contracts and the Governor does not violate Article 5, § 10 of the Michigan Constitution when reorganizing a department under Article 5, § 2 of the Michigan Constitution in a way that eliminates positions, we reverse and remand.

## I. FACTS

## A. BACKGROUND FACTS

In 1992, the Michigan Legislature established "a parole board consisting of 10 members . . ." within the Department.[1] In 2009, Governor Granholm reorganized the

---

[1] MCL 791.231a(1).

-1-

Department,[2] abolished the parole board, and created the fifteen-member Parole and Commutation Board.[3]

The members were members of the Parole and Commutation Board. The members each received a letter of appointment from the Governor's office. Hardman's term was from April 19, 2009 to November 20, 2012, Sullivan, Aguirre, and Harmon's terms were from December 1, 2009, to November 30, 2013, and Thomas and Atterberry's terms were from December 1, 2010 to November 30, 2014.

## B. ORDER 2011-3

In 2011, by Order 2011-3, Governor Snyder abolished the Parole and Commutation Board and created the Parole Board. Order 2011-3 provided that the Parole Board "shall consist of 10 members appointed by the Director of the Department of Corrections." Section II(A) of Order 2011-3 transferred to the Parole Board

> [a]ll of the authority, powers, duties, functions, responsibilities, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds of the Michigan Parole and Commutation Board[.]

Section V(B) provided that

> [a]ll rules, orders, contracts, and agreements relating to the transfers under this Order lawfully adopted prior to the effective date of this Order shall continue to be effective until revised, amended, repealed, or rescinded.

Order 2011-3 granted the Director of the Department of Corrections the power to appoint Parole Board members. The Director did not appoint any of the members to serve on the new Parole Board.

## C. PROCEDURAL HISTORY

The members filed suit on January 5, 2012, seeking damages for breach of contract and promissory estoppel. They claimed that the State breached their employment contracts by terminating them without just cause on April 15, 2011. On June 3, 2013, the State moved for summary disposition. The State contended that the Governor had permissibly reorganized the executive branch under Article 5, § 2 of the Michigan Constitution.

In their response, the members also moved for summary disposition. The members asserted that Order 2011-3 had transferred their employment contracts from the Parole and Commutation Board to the Parole Board. The members contended that Article 5, § 2 does not authorize the Governor to breach existing employment contracts. And the members also asserted

---

[2] Executive Order No. 2009-3; MCL 791.304.

[3] Order 2009-3; MCL 791.304.

that their termination violated the Michigan Constitution's prohibition against the impairment of contracts.

## D. THE TRIAL COURT'S RULING

Following a hearing on June 21, 2013, the trial court denied the State's motion for summary disposition and granted the members' motion for summary disposition. The trial court concluded that the members' letters of appointment continued to be effective after Order 2011-3. The trial court also concluded that Order 2011-3 transferred the members' contracts from the Parole and Commutation Board to the Parole Board. The trial court agreed that the Governor had authority to eliminate the members' positions, but concluded that their contracts remained valid and the termination breached their contracts. It thus granted the members' motion for summary disposition on liability and denied the State's motion for summary disposition.

## II. INTERPRETING ORDER 2011-3

## A. STANDARD OF REVIEW

We review de novo the trial court's ruling on a motion for summary disposition.[4] This Court reviews de novo issues of law, including issues of constitutional construction[5] and the constitutionality and interpretation of an executive order.[6]

## B. LEGAL STANDARDS

### 1. GENERAL STANDARDS OF INTERPRETATION

When interpreting constitutional provisions, this Court gives constitutional language the meaning that "reasonable minds, the great mass of people themselves, would give it."[7] We must also consider "the circumstances surrounding adoption of the constitutional provision and the purpose sought to be accomplished . . . ."[8] We must avoid interpretations that create

---

[4] *Straus v Governor*, 459 Mich 526, 533; 592 NW2d 53 (1999).

[5] *Goldstone v Bloomfield Twp Pub Library*, 479 Mich 554, 558; 737 NW2d 476 (2007).

[6] See *Straus*, 459 Mich at 534 (we construe executive orders similar to statutes); *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002) (we review de novo the constitutionality of statutes).

[7] *House Speaker v Governor*, 443 Mich 560, 577; 506 NW2d 190 (1993) (quotation marks and citation omitted).

[8] *Id*. at 580 (quotation marks and citation omitted).

constitutional invalidity.[9]  We consider the administrating agency's interpretation "persuasive as to the meaning of the order unless it is plainly erroneous or inconsistent with the order."[10]

The purpose of interpretation is to determine the intent of the document's drafter.[11] When interpreting executive orders, this Court gives unambiguous orders the meanings that they clearly express.[12]  If possible, we must give effect to every word, sentence, and section.[13]  We construe executive orders as constitutional unless the order is clearly unconstitutional.[14]

## 2.  ARTICLE 5, § 2 OF THE MICHIGAN CONSTITUTION

Article 5, § 2 of the Michigan Constitution provides that

> the governor may make changes in the organization of the executive branch or in the assignment of functions among its units which he considers necessary for efficient administration.

"[T]his provision is clear and unambiguous."[15]  It gives the Governor express authority to alter the executive branch in broad or limited fashions.[16]  Transferring the authority, duties, functions and responsibilities of one department to another department changes the organization of the executive branch.[17]  The constitutional convention and ratifying public intended Article 5, § 2 to "bestow upon the Governor considerable authority to reorganize the executive branch."[18]  Thus, the Governor's power under this section "is nearly plenary."[19]

## 3.  ARTICLE 5, § 10 OF THE MICHIGAN CONSTITUTION

Article 5, § 10 of the Michigan Constitution provides that

---

[9] *Id*. at 585.

[10] *Soap & Detergent Ass'n v Natural Resources Comm*, 415 Mich 728, 757; 330 NW2d 346 (1982) (quotation marks omitted).

[11] See *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 13; 795 NW2d 101 (2009).

[12] *Soap & Detergent Ass'n*, 415 Mich at 757.

[13] *Id*.

[14] *Straus*, 459 Mich at 534.

[15] *House Speaker*, 443 Mich at 577.

[16] *Id*.

[17] *Id*. at 578.

[18] *Id*. at 585.

[19] *Straus*, 459 Mich at 534.

[t]he governor shall have power and it shall be his duty to inquire into the condition and administration of any public office and the acts of any public officer, elective or appointive. He may remove or suspend from office for gross neglect of duty or for corrupt conduct in office, or for any other misfeasance or malfeasance therein, any elective or appointive state officer, except legislative or judicial, and shall report the reasons for such removal or suspension to the legislature.

Article 5, § 10 "essentially provides that the Governor may only remove a public officer for good cause."[20]

### 4. ARTICLE 1, § 10 OF THE MICHIGAN CONSTITUTION

Article 1, § 10 of the Michigan Constitution provides that "[n]o . . . law impairing the obligation of contract shall be enacted."

### C. APPLYING THE STANDARDS

### 1. OVERVIEW

The State contends that Order 2011-3 voided the members' agreements with the State. The members contend that Order 2011-3 transferred their contracts to the Parole Board and, therefore, did not abolish their contracts. We conclude that Order 2011-3 did not transfer the members' agreements to the Parole Board and that Order 2011-3 permissibly eliminated the members' positions.

### 2. CONTRACTUAL RELATIONSHIP

As an initial matter, we note that the State has not contended that the members did not have a contractual relationship with the State.[21] Instead, the State contends that the Governor's removal of the members' positions did not violate the just-cause provision of the members' employment agreements. Therefore, we presume for the purposes of this appeal that a just-cause provision applied to the members' relationship with the State.

### 3. ABOLITION OF THE MEMBERS' POSITIONS

The State contends that the trial court erred when it determined that the State breached the members' contracts because Order 2011-3 abolished the members' positions. We agree and conclude that the trial court erroneously determined that Order 2011-3 transferred the members' employment to the Parole Board.

---

[20] *Morris v Governor*, 214 Mich App 604, 611; 543 NW2d 363 (1995).

[21] See *Attorney General, ex rel Rich v Jochim*, 99 Mich 358, 367-368; 58 NW 611 (1894) (a public office is not the subject to a contract, and appointment does not establish a contractual relationship).

Section V(B) of Order 2011-3 states that

> [a]ll rules, orders, contracts, and agreements relating to the transfers under this Order lawfully adopted prior to the effective date of this Order shall continue to be effective until revised amended, repealed, or rescinded.

Therefore, the question is whether the members had an order, contract, or agreement "relating to the transfers under this Order[.]"  We conclude that the members did not have such a contract.

Among other things, Order 2011-3 transferred "personnel" to the Parole Board.[22]  The word "personnel" means "the body of persons employed in an organization."[23]  For the reasons below, we conclude that the Governor did not transfer the members when the Governor transferred "personnel."

When an executive order uses language in one part of the order that it omits in another, we presume that the omission was intentional.[24]  Order 2011-3 repeatedly refers to the appointed members of the Parole Board as "members of the Board" in Section II, subsections A, B, C, and E.  Order 2009-3 similarly referred to the members of the Parole and Commutation Board as "members."

In contrast, Section II(D) of Order 2011-3 allows the board's chairperson to select "secretaries and other assistants[.]"  This section replaced Section II(D) of Order 2009-3, which provided that the chairperson could appoint "secretaries, assistants, clerks, and other employees[.]"  The Governor's inclusion of "personnel" in the transfer, rather than "members of the Board"—a term that the Governor used repeatedly elsewhere in the order—indicates that the Governor did not intend to transfer the members to the new Parole Board.

This interpretation is consistent with the Parole Board's subsequent interpretation of the order.  The Department required all members of the Parole and Commutations Board who wished to serve on the Parole Board, including the chairperson, to submit letters of interest, applications, and an interview for the position before receiving an appointment.  The Parole Board's interpretation is persuasive and the Governor's use of "personnel" rather than "members of the Board" does not contradict its interpretation.[25]

We conclude that when the Governor transferred the "personnel" of the Parole and Commutation Board to the Parole Board, the Governor intended to, and did, transfer "secretaries and other assistants" rather than the members.  Therefore, we conclude that the Order 2011-3 did not transfer those contracts from the Parole and Commutation Board to the Parole Board.

---

[22] Order 2011-3, Section III(A).

[23] *Random House Webster's New College Dictionary* (1997).

[24] See *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011).

[25] See *Soap & Detergent Ass'n*, 415 Mich at 757.

In short, the members were not transfers under the order because they were not personnel. Rather, they were members, a different class of persons. Accordingly, Section V(B) of Order 2011-3 did not apply to the members because they did not have a contract or agreement that related to the transfers under the order.

## 4. VIOLATION OF ARTICLE 5, § 10

As an alternative ground for affirmance, the members contend that if the Governor abolished their positions, he violated Article 5, § 10 of the Michigan Constitution. We disagree.

In *Morris v Governor*, this Court considered whether the Governor violates Article 5, § 10 when the Governor removes positions from a department of the executive branch under Article 5, § 2.[26] We concluded that the Governor does not violate Article 5, § 10 of the Michigan Constitution when the Governor eliminates positions as part of a reorganization.[27] We held that Article 5, § 10 applies in cases of removal, "which contemplates the firing of one person and the hiring of another to fill the same position."[28] This provision is not implicated when the Governor completely abolishes the position.[29]

Here, the Governor created the Parole Board with ten members, a five-member reduction when compared to the Parole and Communication Board, which had fifteen members. This is not a case in which the Governor fired one person and hired another to fill the same position. The positions were on a different board and the new board was clearly smaller in size. Because this case concerns a reorganization, we conclude that Article 5, § 10 does not apply.

## 5. UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT

As a second alternative ground for affirmance, the members contend that the Governor's reorganization of the Parole Board violated the Contract Clause of the Michigan Constitution. The trial court did not decide this issue and the State did not raise or argue the issue in their brief on appeal. We need not address an issue that was not the basis of the trial court's decision.[30] And, though we might exercise our discretion to review the issue as a question of law for which the necessary facts have been presented, this Court should decline to do so when it would require us to construct and evaluate our own arguments.[31] Our analysis of this issue would benefit from a decision of the trial court and full argument. Therefore, we decline to affirm on this basis. Our decision does not prevent the members from raising this issue on remand.

---

[26] *Morris*, 214 Mich App at 610-611.

[27] *Id.* at 611.

[28] *Id.*

[29] *Id.*

[30] *Old Kent Bank v Kal Kustom, Inc*, 255 Mich App 524, 534; 660 NW2d 384 (2003); *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 83; 600 NW2d 348 (1999).

[31] *Candelaria*, 236 Mich App at 83.

## III. CONCLUSION

We conclude that the trial court erred when it determined that Order 2011-3 transferred the members' contracts from the Parole and Commutation Board to the Parole Board, and when it concluded that the elimination of the members' positions breached their contracts. However, we do not opine regarding whether this action violated the contracts clause of the Michigan Constitution. Accordingly, we reverse the trial court's order granting the members' motion for summary disposition and denying the State's motion for summary disposition, and remand for further proceedings consistent with this opinion.

We reverse and remand. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ William C. Whitbeck
/s/ Michael J. Riordan