*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMUEL TOURKOW, by DAVID TOURKOW,
Personal Representative,

        Plaintiff,

v

MICHAEL THOMAS FOX,

        Defendant/Third-Party Plaintiff-
        Appellant,

and

SWEET INSURANCE AGENCY, formerly known
as VERBIEST INSURANCE AGENCY, INC.,

        Third-Party Defendant-Appellee.

UNPUBLISHED
February 12, 2025
12:59 PM

No. 367494
Oakland Circuit Court
LC No. 2019-172541-NI

ENCOMPASS INDEMNITY COMPANY,

        Plaintiff-Appellee,

v

MICHAEL FOX, JON FOX, AND JOYCE FOX,

        Defendants-Appellants,

and

DAVID TOURKOW, as Personal Representative of
SAMUEL TOURKOW,

        Defendant,

and

FARM BUREAU INSURANCE COMPANY,

No. 367512
Oakland Circuit Court
LC No. 2019-174436-CK

-1-

Intervening Defendant.

_____

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

This appeal turns on whether fraud occurred in relation to an April 26, 2018 renewal contract for a policy of insurance under the no-fault act, MCL 500.3101 *et seq.*, issued by plaintiff, Encompass Indemnity Company ("Encompass"). Because there remains a genuine dispute of fact regarding whether fraud occurred and on the related issue of domicile, we reverse and remand for further proceedings.

## I. BACKGROUND

Defendants, Jon Fox ("Jon") and Joyce Fox ("Joyce"), and defendant/third-party plaintiff, Michael Thomas Fox ("Michael") (collectively "the Foxes"), appeal as of right a July 25, 2023 order granting summary disposition in favor of plaintiff, Encompass, under MCR 2.116(C)(10) (no genuine issue of material fact). The July 25, 2023 order did not expressly dismiss Michael's third-party claim against third-party defendant, Sweet Insurance Agency ("Sweet"), formerly known as Verbiest Insurance Agency, Inc. ("Verbiest"). However, in an August 22, 2023 opinion and order, which denied the Foxes' motion for reconsideration of the July 25, 2023 order, the trial court expressly stated it intended to grant summary disposition in favor of Sweet under MCR 2.116(I)(1) (the trial court shall grant summary disposition "without delay" if proofs show there is no genuine issue of material fact).[1] The Foxes appeal from this final order and also substantively challenge the July 25, 2023 order.

The pertinent facts span over ten years. In April 2011, Jon and Joyce received motor vehicle insurance from Encompass with an address in Bingham Farms, Michigan, as the policy address (hereinafter "the policy address"). Jon and Joyce were assisted by insurance agents at Sweet to obtain the Encompass policy. In 2017, Michael moved in with Jon and Joyce, who are his parents. Michael was added as an additional insured on the Encompass policy, and his address was listed as the policy address. However, in 2017, or 2018, Michael began staying the night at the home of his then-girlfriend, Sara Jankoviak, in Oak Park, Michigan. Whether Michael moved into Jankoviak's home, and left the policy address, is highly contested. Michael testified in his deposition that between 2017 and when he purchased his own home in Oak Park in 2018, he alternated between staying at the policy address and Jankoviak's home. However, he changed his address to Jankoviak's home address with the Michigan Secretary of State and listed that address as his own in various documents. Jankoviak testified Michael stayed every night at her home

_____

[1] The Foxes (in Docket No. 367512) and Michael (in Docket No. 367494) filed individual appeals from the July 25, 2023 order. We consolidated the appeals "to advance the efficient administration of the appellate process." *Tourkow v Fox; Encompass Indemnity Co v Fox*, unpublished order of the Court of Appeals, entered September 6, 2023 (Docket Nos. 367494 and 367512).

-2-

beginning in January 2018. Then, in December 2018, the two moved into a home he purchased in Oak Park.[2]

In March 2018, LaCasse mailed Jon and Joyce renewal materials in relation to the Encompass policy. The renewal policy coverage summary sent to Jon and Joyce listed the policy address, and Michael was listed as a rated driver of certain vehicles. The Encompass policy was renewed by Jon and Joyce for a one-year term, beginning April 26, 2018. In relevant part, the policy contained a provision, which stated coverage would not be provided if "one or more covered persons": (1) "Concealed or misrepresented any material fact or circumstance;" (2) "Engaged in fraudulent conduct;" or (3) "Made false statements relating to this insurance. . . ." The Encompass policy also contained a provision specifying a duty to report certain policy changes. On May 30, 2018, Michael leased a 2018 Ford F-150, and the Encompass policy was amended to add that vehicle with Michael as the rated driver. His old vehicle was removed from the policy.

On December 26, 2018, after moving into his new house in Oak Park, Michael was driving the F-150 in Oak Park when he struck pedestrian Samuel Tourkow ("Samuel"). David Tourkow ("David"), as Samuel's personal representative, filed suit against Michael. It was alleged Michael's negligent driving caused Samuel to suffer serious injuries. David, on behalf of Samuel, also filed a claim for personal protection insurance (PIP) benefits with Encompass.

In May 2019, Encompass sent Jon and Joyce a letter, informing them that Encompass was rescinding the insurance for the renewal policy term beginning April 26, 2018. The letter alleged Jon and Joyce made multiple material misrepresentations concerning the garaging location of the F-150 that justified rescission and denial of the claims arising from Michael's accident. Soon thereafter, Encompass filed a complaint for declaratory relief against the Foxes and David, in his capacity as Samuel's personal representative. Encompass alleged it had a right to rescind the policy based on material misrepresentations about the F-150. Michael then filed a third-party claim against Sweet, alleging Sweet was an authorized agent of Encompass and any lack of coverage with Encompass was the result of Sweet's negligence. Michael alleged Sweet knew Michael no longer lived at the policy address, and instead was living in Oak Park, when Sweet added the F-150 to the Encompass policy in May 2018. Michael requested, if the trial court declared the Encompass policy to be void *ab initio*, that the trial court order Sweet to defend and indemnify Michael. The trial court consolidated the cases.[3]

---

[2] Michael testified that in June 2018, he contacted an insurance agent, Cheryl LaCasse, through Sweet to get quotes for homeowner's insurance from Encompass because he put an offer on a home. According to Michael, LaCasse said Encompass's rates were not competitive, and recommended he look for better rates from Auto Owners Insurance Company or Farm Bureau Insurance Company.

[3] Intervening defendant Farm Bureau Insurance Company, which was assigned by the Michigan Assigned Claims Plan to pay PIP benefits to Samuel, was permitted to intervene as a defendant in the Encompass litigation. Farm Bureau is not a party to these appeals.

In June 2020, and September 2020, the trial court granted summary disposition in favor of Encompass and Sweet based on the trial court's conclusions that: (1) the Foxes "fail[ed] to notify Encompass of Michael Fox's change of residence, and the change of the garaging location of Michael Fox's Ford F-150"; and (2) "the Fox Defendants failed to present a genuine issue of material fact [under MCR 2.116(C)(10)] demonstrating that Sweet was aware that Michael Fox was garaging his vehicle in Oak Park." In May 2021, the trial court entered a consent judgment by the stipulation of David and Michael, in which a $6,500 judgment was entered against Michael.[4]

Michael appealed as of right, arguing the trial court's decisions to grant summary disposition must be vacated under *Meemic Ins Co v Fortson*, 506 Mich 287; 954 NW2d 115 (2020). According to Michael, "at most, Jon and Joyce engaged in postprocurement fraud that cannot support the rescission of a no-fault PIP policy." After analyzing our Supreme Court's decision in *Meemic*, which was released after the motions for summary disposition were decided by the trial court, this Court concluded the motions should be reconsidered in light of *Meemic* and other pertinent caselaw. *Tourkow v Fox*, unpublished per curiam opinion of the Court of Appeals, issued November 22, 2022 (Docket No. 357523), p 6. This Court vacated "the trial court's orders and remand[ed] for the trial court. . . ." *Id*. In so holding, this Court stated:

> [Michael] and Encompass dispute the effect of *Meemic*, i.e., whether the alleged misrepresentations constituted preprocurement or postprocurement fraud, and thus whether Encompass could rescind the policy. In deciding the question, the trial court will have to consider the effect of the April 26, 2018 renewal policy and whether this constitutes a new and separate contract. If it does, then misrepresentations in the inducement of the renewal policy would be considered preprocurement fraud; but if not, then any misrepresentations would constitute postprocurement fraud because they occurred after the inception of the original contract from 2011 between the Foxes and Encompass. In answering this question, the trial court should consider this Court's description of renewal contracts. . . . [*Id*. at 7.]

In May 2023, Encompass moved for summary disposition under MCR 2.116(C)(10), arguing the renewal policy was a new contract under prevailing Michigan caselaw and preprocurement fraud occurred. Encompass also argued the Foxes failed to comply with the contractual terms of the renewal policy by failing to update the garaging addresses of the insured vehicles. Encompass argued rescission was proper on both grounds. The Foxes opposed the motion, arguing genuine issues of material fact existed.

In a July 25, 2023 opinion and order, issued without oral argument, the trial court granted summary disposition in favor of Encompass. The trial court held the April 26, 2018 renewal policy was "a new, separate, and distinct contract"; and the Foxes engaged in preprocurement *and* postprocurement fraud. The trial court declared: (1) the April 26, 2018 renewal policy was void

---

[4] Collection on the judgment was stayed pending the exhaustion of any appeals. The stipulated judgment expressly provided that the judgment would be set aside if the trial court's decisions on Michael's insurance coverage were reversed.

*ab initio*; (2) Encompass had no duty to defend or indemnify Michael; and (3) Encompass was not in the line of priority to provide PIP benefits. The trial court noted Sweet did "take a position as to the Motion. . . ." While the trial court noted Sweet disagreed with the Foxes' argument that Sweet, by way of LaCasse, was aware Michael no longer lived at the policy address, the trial court stated: "Sweet does not request any relief." Nonetheless, the order reflected it was a final order, which closed the case.

The Foxes moved for reconsideration, arguing the trial court erred by concluding questions of fact did not exist as to whether fraud occurred. The Foxes also argued the July 25, 2023 order was not a final order because Michael's third-party claim against Sweet was still pending. In an August 22, 2023 opinion and order, the trial court denied the motion for reconsideration. With respect to the Foxes' argument the July 25, 2023 order was not a final order because Michael's third-party claim was still pending against Sweet, the trial court concluded: "[T]he documentary evidence does not support Sweet had any knowledge about the change of address until after Joyce and Jon procured the Policy in April 2018." After reviewing "the undisputed evidence," the trial court stated: "The Court does not find a palpable error . . . because summary disposition was also warranted as to Sweet pursuant to MCR 2.116(I)(1)." The instant appeals followed.

## II. STANDARDS OF REVIEW

"Whether due process has been afforded is a constitutional issue that is reviewed de novo." *Elba Twp v Gratiot Co Drain Com'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). "Interpretation of a contract and whether the trial court properly applied equitable principles involves questions of law that we review de novo." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443; 889 NW2d 759 (2016). "[Q]uestions of law relevant to a request for a declaratory judgment are reviewed de novo, while the decision whether to grant declaratory relief is reviewed for an abuse of discretion." *Davis v Wayne Co Election Comm*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 368615 and 368628); slip op at 7. We review for an abuse of discretion whether the remedy of rescission of a contract is equitable. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020). An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). An abuse of discretion necessarily occurs when the trial court makes an error of law. *Id*. The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

Finally, this Court reviews "de novo a trial court's decision on a motion for summary disposition." *Bailey v Antrim Co*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). MCR 2.116(I)(1) states: "If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis, quotation marks, and citations omitted). The motion "may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*.

-5-

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition. . . ." *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020) (quotation marks and citation omitted). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008).

## III. THE TRIAL COURT'S GRANT OF SUMMARY DISPOSITION IN FAVOR OF ENCOMPASS WAS CLEARLY ERRONEOUS

The Foxes argue the trial court erred by granting summary disposition in favor of Encompass and abused its discretion by declaring the April 26, 2018 renewal policy void *ab initio*. We agree.

"[I]t is well settled that an insurer is entitled to rescind a policy *ab initio* on the basis of a material misrepresentation made in an application for no-fault insurance." *Bradley v Westfield Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365828); slip op at 5 (alteration in original; quotation marks and citation omitted). "[R]escission renders a contract void *ab initio*— as if it never existed." *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 211; 12 NW3d 20 (2023). "[I]n order to justify rescission of PIP coverage with respect to preprocurement misrepresentations, the insurer must be able to demonstrate common-law fraud under equitable principles." *Bradley*, ___ Mich App at ___; slip op at 5 (alteration in original; quotation marks and citation omitted).

Michigan courts have long relied on *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), abrogated in part by *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574, 585; 967 NW2d 869 (2021), to determine whether an insurance policy could be voided based on fraud. The insurer must show that "(1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it." *Bahri*, 308 Mich App at 424-425 (quotation marks and citation omitted). "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Id*. at 424 (citation omitted).

However, the circumstances under which an insurer may invalidate an insurance contract based on fraud have changed. The current state of insurance-fraud litigation in Michigan separates fraud into two broad categories based on when it occurred: (1) fraud that occurred *before* the parties entered into an insurance contract (preprocurement fraud); and (2) fraud that occurred *after* the parties entered into an insurance contract (postprocurement fraud). *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 724-730; 957 NW2d 858 (2020). See also *Williams*, 335 Mich App at 581-587 (distinguishing between postprocurement fraud and preprocurement fraud). Postprocurement fraud has been divided into two types: (1) fraud that occurred *before* litigation

began; and (2) fraud that occurred *after* litigation began. *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 619-622; 963 NW2d 695 (2020).

As a result, *when* the alleged fraud occurred is crucially important in insurance-fraud cases. If fraud occurred before the parties entered into the insurance contract (preprocurement), then rescission is available as a remedy. *Meemic*, 506 Mich at 305-308. If fraud occurred after the contract was signed, but before litigation began, then rescission is available as a remedy only if the fraud substantially breached the contract. *Id*. at 307-310. Finally, if fraud occurred after litigation began—which necessarily also means that it occurred after the contract was signed— then rescission is not available as a remedy. *Fashho*, 333 Mich App at 619.

With respect to when the alleged fraud occurred in this case, in the previous appeal, this Court remanded to the trial court with instructions "to consider the effect of the April 26, 2018 renewal policy and whether this constitutes a new and separate contract." *Tourkow*, unpub op at 7. The trial court complied with this directive, concluding the April 26, 2018 renewal contract was a new, separate contract. Nevertheless, the trial court somehow held the Foxes committed preprocurement *and* postprocurement fraud. The Foxes do not dispute the separate nature of the April 2018 renewal contract on appeal. Rather, the Foxes challenge the trial court's determination it was proper to rescind the renewal contract because preprocurement fraud occurred.

## A. PREPROCUREMENT FRAUD

As already stated, "in order to justify rescission of PIP coverage with respect to preprocurement misrepresentations, the insurer must be able to demonstrate common-law fraud under equitable principles." *Bradley*, ___ Mich App at ___; slip op at 5 (alteration, quotation marks, and citation omitted). Common-law fraud is when a defendant makes "a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result." *Alfieri v Bertorelli*, 295 Mich App 189, 193; 813 NW2d 772 (2012) (citations omitted). "Silent fraud is essentially the same except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *Id*. See also *Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018) (requiring the plaintiff in a silent fraud action to suffer damage because of "suppression of a material fact, which a party in good faith is duty-bound to disclose") (quotation marks and citation omitted).

The Encompass policy was renewed by Jon and Joyce for a one-year term, beginning April 26, 2018; and it is undisputed Michael was driving the F-150 when he struck Samuel. Therefore, the relevant time is when the policy was amended to include the F-150, which was May 30, 2018, 34 days after the renewal policy came into effect. The updated coverage information concerning the F-150 supports the policy came into effect on April 26, 2018, and would remain in effect until April 26, 2019. See *21st Century Premier Ins Co*, 315 Mich App at 443-444 (discussing renewal contracts). Under these facts, Encompass cannot establish fraud in the inducement, or preprocurement fraud, in relation to the F-150 because the F-150 was not leased and added to the policy until after the policy was renewed. The Foxes' failure to update the garaging address of the

F-150 was a postprocurement event.[5]  As such, standing alone, it did not justify voiding the renewal policy *ab initio*.  See *Meemic*, 506 Mich at 304-305.  Therefore, the trial court erred in granting summary disposition in favor of Encompass by concluding there was no genuine dispute of fact that preprocurement fraud occurred.

## B.  POSTPROCUREMENT FRAUD

An allegation of "postprocurement fraud" will only be a valid defense if the Foxes "fail[ed] to perform a substantial part of the contract or one of its essential terms."  *Id*. at 307-308.  See also *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997) ("In order to warrant rescission of a contract, there must be a material breach affecting a substantial or essential part of the contract.").

In granting Encompass's motion for summary disposition, the trial court concluded postprocurement fraud occurred and held:

> The change of address provision would also result in no coverage for the Accident because the documentary evidence supports that Michael leased the Ford F-150 in May 2018 and used [Jankoviak's] Address and when he purchased the home in Oak Park and no one reported Michael's change of address prior to the Accident.  As such, the Fox Defendants failed to meet their contractual duty to notify Encompass of certain changes, such as the place of principal garaging of insured vehicles.

The trial court is correct that a portion of the Encompass insurance policy contains a provision specifying a duty to report policy changes, including changes in garaging locations of insured vehicles, within 30 days.  However, there is a question of fact as to whether this term of the renewal policy was violated.  Michael's deposition testimony supports he did not move out of the policy address until early December 2018, at which point Michael moved into his home in Oak Park.  Under the terms of the renewal policy, Michael had 30 days to report the change in the garaging address of the F-150.  Even if Michael moved into his Oak Park home on December 1, 2018, the Foxes had until December 31, 2018, to report the change.  The accident occurred on December 26, 2018, which was within the 30-day window.

While Jankoviak's testimony supports Michael moved into her home in Oak Park long before December 2018, and therefore the F-150 was never garaged at the policy address after it was acquired in May 2018, "[a]ssessing truth and weighing evidence are not within a judge's

_____

[5] Additionally, as noted by the Foxes on appeal, there was a genuine issue of material fact as to whether they intended to withhold the garaging address of the F-150 from Encompass and Sweet.  See *Roberts v Saffell*, 280 Mich App 397, 405; 760 NW2d 715 (2008) ("for silent fraud, the plaintiff must prove that the defendant knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions and with the intent to deceive").  Indeed, Jon, Joyce, and Michael testified they were unaware that Michael moving out of the policy address would affect the insurance coverage through Encompass.

purview under MCR 2.116(C)(10)." *Williams*, 335 Mich App at 586. "A party's own testimony, standing alone, can be sufficient to establish a genuine question of fact." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 476; 957 NW2d 377 (2020). "[W]here the truth of a material factual assertion of a moving party depends upon a deponent's credibility, there exists a genuine issue for the trier of fact and a motion for summary disposition should not be granted." *Vanguard Ins Co v Bolt*, 204 Mich App 271, 276; 514 NW2d 525 (1994). A "jury is free to credit or discredit *any* testimony." *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001) (emphasis added). "A conflict in the evidence may generally only be removed from the trier of fact's consideration if it is based on testimony that is essentially impossible or is irreconcilably contradicted by unassailable and objective record evidence." *Jewett*, 332 Mich App at 476. "Thus, summary disposition is improper when the resolution of a matter turns on the relative credibility of witnesses, even if a party cannot submit documentary proof to refute the opposing party's claims." *Id*. at 476-477.

The issue of whether Michael garaged the F-150 at Jankoviak's home, or the policy address, cannot be decided without making credibility determinations.[6] We acknowledge there is documentary evidence supporting Michael lived at Jankoviak's home long before he acquired the F-150 in May 2018. While this evidence tends to support the F-150 was never garaged at the policy address, and the Foxes failed to report it within the 30-day window, this Court cannot make credibility determinations, *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 113; 793 NW2d 533 (2010); and we are required to view the evidence in a light most favorable to the nonmoving party when reviewing a motion for summary disposition, *Skinner*, 445 Mich at 162. Inconsistencies in statements given by witnesses cannot be ignored, *White v Taylor Distrib Co*, 482 Mich 136, 142; 753 NW2d 591 (2008); but summary disposition is inappropriate where evidence offered in the trial court is capable of supporting different conclusions and creates a question of fact, *Shelby Charter Twp v Papesh*, 267 Mich App 92, 103; 704 NW2d 92 (2005).

In sum, the trial court erred by granting summary disposition in favor of Encompass based on the trial court's erroneous conclusion that preprocurement fraud occurred in relation to the F-150. The trial court also erred by concluding summary disposition was proper on the basis of postprocurement fraud. It follows that the trial court abused its discretion by holding the renewal policy was void *ab initio* on the basis of the alleged fraud. See *Pioneer State Mut Ins Co*, 331 Mich App at 405 ("The remedy of rescission is granted only in the sound discretion of the court.") (Quotation marks and citation omitted); *Davis*, ___ Mich App at ___; slip op at 7 (holding "the decision whether to grant declaratory relief is reviewed for an abuse of discretion"). We reverse the trial court's July 25, 2023 decision to grant summary disposition in favor of Encompass. Because this decision was erroneous, it necessarily follows that the trial court abused its discretion by denying the Foxes' motion for reconsideration of that decision. See *Woods*, 277 Mich App at 629 (holding a trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion). The portion of the August 22, 2023 order denying the Foxes' motion for

---

[6] It is undisputed Michael garaged the F-150 at his Oak Park home after he moved into the home sometime in December 2018.

reconsideration in relation to the trial court's decision to grant summary disposition in favor of Encompass is also reversed.[7]

## IV. THE TRIAL COURT'S GRANT OF SUMMARY DISPOSITION IN FAVOR OF SWEET WAS CLEARLY ERRONEOUS

Michael argues his rights to due process were violated because the basic requirements of notice and a meaningful opportunity to be heard were not satisfied in relation to the trial court's decision to grant summary disposition in favor of Sweet. We agree.

Under Michigan's Constitution, "[n]o person shall . . . be deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. The United States Constitution similarly provides no state shall "deprive any person of life, liberty, or property, without due process of law[.]" US Const, Am XIV. "Due process is a flexible concept, the essence of which requires fundamental fairness. The basic requirements of due process in a civil case include notice of the proceeding and a meaningful opportunity to be heard." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).

The record clearly reveals Michael had no notice that the issue of whether Sweet was entitled to summary disposition on the third-party claim would be decided by the trial court after remand from this Court. Because Sweet did not move for summary disposition and took no stance on Encompass's motion, Michael rightly should have been surprised by the trial court's decision to grant summary disposition in favor of Sweet on the third-party claim. Additionally, Michael did not have the opportunity to be heard on the issue after remand from this Court. Indeed, the trial court waived oral arguments on Encompass's 2023 motion for summary disposition and issued a written opinion and order. This Court has previously held: "[A]ny error by a court in granting summary disposition sua sponte without affording a party an adequate opportunity to brief an issue and present it to the court may be harmless under MCR 2.613(A), if the party is permitted to fully brief and present the argument in a motion for reconsideration." *Al-Maliki*, 286 Mich App at 486. Michael did not have an opportunity to address the issue concerning his third-party claim against Sweet on reconsideration. Indeed, the trial court made the ruling when deciding the Foxes' motion for reconsideration in relation to its decision to grant summary disposition in favor of

---

[7] We acknowledge the Foxes argue the trial court erred by failing to impute Sweet's alleged knowledge concerning Michael's address, and therefore the garaging address of the F-150, to Encompass. However, the trial court did not rule on the issue. "We need not address an issue that was not the basis of the trial court's decision." *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014). "[T]hough we might exercise our discretion to review the issue as a question of law for which the necessary facts have been presented, this Court should decline to do so when it would require us to construct and evaluate our own arguments." *Id*. We decline to decide this issue, which is factually intensive, for the first time on appeal. Additionally, for the reasons discussed later in this opinion, there is a genuine issue of material fact as to whether LaCasse knew Michael no longer lived at the policy address before the December 26, 2018 accident. Therefore, summary disposition would not be proper on this ground in any event.

-10-

Encompass. The basic requirements of notice and a meaningful opportunity to be heard were not satisfied in this case. See *id.* at 488.

While Michael had notice and an opportunity to be heard in relation to Sweet's 2020 motion for summary disposition, it cannot be said the trial court's error was harmless. See MCR 2.613(A). Michael's deposition testimony created a material question of fact on the issue of whether Sweet, via its agent LaCasse, had notice of Michael's change of address, and therefore the garaging address of the F-150. Michael testified LaCasse provided him with a certificate of insurance when he was in the process of leasing the F-150 in May 2018. Specifically, Michael called LaCasse and requested a certificate of insurance. Michael provided LaCasse with Jankoviak's address; and LaCasse provided the certificate of insurance, which listed Jankoviak's address as Michael's address. Michael believed that was the first time he provided Jankoviak's address to LaCasse.

Michael also testified that in June 2018, he asked LaCasse for quotes on homeowner's insurance and insurance on motor vehicles, including the F-150. According to Michael, he again provided Jankoviak's address and said it was his address. He did not provide LaCasse with specific information about his living arrangements, i.e., that he allegedly still stayed the night at the policy address several times each week. In December 2018, Michael moved out of the policy address and into his Oak Park home. Also, in December 2018, LaCasse contacted Michael about homeowner's insurance. According to Michael, LaCasse knew Michael's F-150 was insured under the policy address at that time. Nonetheless, LaCasse stated Michael would not have to obtain his own insurance policy until the renewal policy expired in April 2019. According to Michael, in December 2018, LaCasse knew he purchased his home in Oak Park and had moved into the home. LaCasse "thought there [were] some better rates coming up" on homeowner's insurance and wanted Michael's "business" in the future. Michael told LaCasse he "would take a new quote." Regarding his Oak Park home, Michael testified: "She knew I was moved in."

We acknowledge certain evidence, if believed, would disprove Michael's testimony. Specifically, in 2020, Sweet presented the affidavits of (1) LaCasse; (2) Larry Moore, a sales representative at Royal Oak Ford; and (3) Mike McKenzie, a general sales manager at Royal Oak Ford. However, Michael's testimony supports LaCasse assisted with the certificate of insurance and knew before the December 26, 2018 accident Michael had moved into his Oak Park home. It appears the trial court disregarded Michael's testimony, which was in error because "[a]ssessing truth and weighing evidence are not within a judge's purview under MCR 2.116(C)(10)." *Williams*, 335 Mich App at 586. There is a genuine issue of material fact as to whether LaCasse knew Michael no longer lived at the policy address and failed to properly advise him.

Additionally, in ruling Sweet was entitled to summary disposition, the trial court did not consider whether summary disposition was premature. This is the case even though the argument was raised in Michael's response to Sweet's motion for summary disposition. It is unclear if LaCasse was ever deposed, and it is well-settled a motion for summary disposition is generally premature if granted before discovery on a disputed issue is complete. *Stringwell v Ann Arbor Pub Sch Dist*, 262 Mich App 709, 714; 686 NW2d 825 (2004). While it is possible discovery was closed, this issue was not explored on the record before us. Under these circumstances, the error in failing to provide Michael with notice and a chance to be heard in relation to the postremand

proceedings cannot be considered harmless. We reverse the August 22, 2023 order, denying the Foxes' motion for reconsideration and granting summary disposition in favor of Sweet.

## V. CONCLUSION

The trial court erred by granting summary disposition in favor of Encompass. The trial court also erred by granting summary disposition in favor of Sweet because Michael's rights to due process were violated because the basic requirements of notice and a meaningful opportunity to be heard were not satisfied. The error was not harmless. We reverse the trial court's July 25, 2023, and August 22, 2023 orders and remand to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace